[No. 1840]

GRACE CLOW, RESPONDENT, *v.* N. H. WEST, AS
ADMINISTRATOR OF THE ESTATE OF B. G. CLOW,
DECEASED, ET AL., APPELLANTS.

[142 Pac. 226]

1. JUDGMENT—DISMISSAL AND NONSUIT—EFFECT.
   An order for the nonsuit and dismissal of an action is not a
   judgment on the merits, and does not bar subsequent proceed-
   ings on the same cause of action.

2. FRAUDS, STATUTE OF—CONTRACTS TO DEVISE.
   A contract to devise property in consideration of plaintiff's
   rendition of services to deceased and of remaining with him
   until his death is not, where fully performed on the part of
   plaintiff, within the statute of frauds.

3. LIMITATION OF ACTIONS—RUNNING OF STATUTE.
   Where plaintiff, to whom deceased had agreed to leave
   specified real property in consideration of her remaining with
   and caring for him during his declining years, was in posses-
   sion, claiming to own the property, limitations did not run
   against her right of action against the administrator of the
   deceased to compel specific performance of the contract, not-
   withstanding his denials of her ownership, for plaintiff had an
   equitable title.

4. SPECIFIC PERFORMANCE — CONTRACTS TO DEVISE — EVIDENCE —
   SUFFICIENCY.
   In an action for specific performance of an agreement to
   leave plaintiff real property in consideration of her remaining
   with and caring for deceased during his declining years, evi-
   dence *held* sufficient to warrant specific performance, showing
   that possession was given to plaintiff, and that, in reliance upon
   the agreement, she had changed her position in such a manner
   that she could not be made whole by damages.

APPEAL from the Second Judicial District Court, Washoe
County; *Peter Breen*, Judge, presiding.

Action by Grace Clow against N. H. West, as
administrator of the estate of B. G. Clow, deceased,
and others. From a judgment for plaintiff, defendants
appeal. **Affirmed.**

*Cheney, Massey & Price, W. A. Massey, Benjamin Curler*,
and *F. D. King*, for Appellants.

*James Glynn*, for Respondent.

*Thomas F. Moran, amicus curiæ.*

*Per Curiam:*

This is a suit to enforce the specific performance of an oral agreement to convey real estate and "for such other and different relief in the premises as is meet and agreeable to good conscience and equity."

The complaint alleged that one B. G. Clow died intestate in the county of Washoe on the 19th day of January, 1902, leaving an estate in said county consisting of real and personal property of the value of more than $50,000; that thereafter, and on the 6th day of February, 1903, the said appellant N. H. West was appointed administrator of the estate of said B. G. Clow, deceased, and has ever since been such administrator. The complaint further alleged:

"That on or about the ........ day of July, 1890, the said B. G. Clow was the owner of, and in possession of, the south half of the northwest quarter and the southwest quarter of the northeast quarter of section 10, in township 19 north, range 19 east, M. D. & M., State of Nevada, containing 120 acres more or less, with the improvements thereon, and all water and water rights belonging thereto and used thereon, and was occupying the same as a homestead in company and association of his wife, Mrs. Jessie Clow, and plaintiff herein. That at said time plaintiff was of the age of 19 years, and she expressed to the said B. G. Clow, deceased, her desire, wish, and intention to leave the home of the said B. G. Clow, deceased, where she had resided for several years prior thereto and enter upon independent employment for the purpose of endeavoring to secure a competency of her own, and that thereupon the said B. G. Clow, deceased, earnestly requested and importuned plaintiff to remain with him and his said wife and to assume the control of his and her household and domestic affairs, and counsel with and assist him in the management and conduct of his business affairs, and agreed with the plaintiff that if she would do so, in consideration thereof, and services so rendered, and to be rendered, by said plaintiff, and in consideration

of the premises, she should then have, and become the absolute owner of, the foregoing real estate and improvements, subject only to a life estate therein and control thereof by the said B. G. Clow and his said wife, Mrs. Jessie Clow, and that as a further consideration of said services to be so rendered by plaintiff, and to be rendered by her, and as a full consideration therefor, the said B. G. Clow agreed with plaintiff that, subject to such life estate before mentioned, he would prior to his death convey the said real estate and improvements to plaintiff, by a good and sufficient paper title, and by a good and sufficient deed, and, in the event of his death before so doing, his legal representative, by his last will and testament should be instructed by the terms thereof to execute such a deed and deliver the same to this plaintiff. That thereupon, and in express reliance upon the said promise and agreement, and without further or other consideration, the plaintiff did, in consideration of the premises, enter into and take full possession of all of said premises mentioned aforesaid, under and according to the terms of said agreement, subject to the life estate therein and management thereof of the said B. G. Clow, as before mentioned, and faithfully act as the manager of the household and domestic affairs of the said B. G. Clow, and as his adviser, counselor, amanuensis, and confidant, and being until the plaintiff was of the age of 31 years. That the said Jessie Clow, wife of the said B. G. Clow, deceased, died on or about the 25th day of January, 1900, and left no heirs other than the said B. G. Clow, deceased, and that said real estate hereinbefore mentioned, except in so far as the same was vested in plaintiff aforesaid, was at all times the property of the said B. G. Clow, deceased. That plaintiff, in reliance upon the agreement hereinbefore mentioned, fully performed all her obligations thereunder. That the said B. G. Clow failed, neglected, and omitted to either convey the said real estate and improvements to plaintiff before his death or by his last will and testament to instruct and direct his

legal representative so to do. That plaintiff, ever since said agreement above mentioned was entered into by and between plaintiff and the said B. G. Clow, entered into and remained in full, quiet, peaceable, open, notorious, adverse posession of said premises as to all the world, save and except the life estate and management thereof reserved by the said B. G. Clow, until the death of the said B. G. Clow, and thereafter, and ever since said death, she has been and is now in said possession of all of said premises, according to the terms of said agreements, excepting in so far as the defendant N. H. West, said legal representative of said deceased, has wrongfully trespassed upon said premises, and against the will of this plaintiff."

Defendants in their answer filed denied the allegations in the complaint as to the oral agreement for conveyance of the land in question to the plaintiff, respondent herein. For further and separate defenses, defendants set up the statute of frauds and the statutes of limitations, and further that the subject-matter of the action was *res adjudicata.* The case was tried by the court with the aid of a jury. Certain specific questions were submitted by the respective parties to the jury, which answered all questions as to the oral agreement alleged in favor of the plaintiff. Subsequently the court made and filed findings of its own from which it deduced certain conclusions of law upon which a judgment and decree were entered in favor of the plaintiff; that all right, title, and interest, which the said defendant N. H. West acquired by operation of law, as administrator of the estate of B. G. Clow, deceased, in and to the land and premises in controversy, be, and the same is, hereby by this decree vested in Grace Clow in fee simple and absolute, and further that all right, title, and interest of the other defendants, as heirs of law of B. G. Clow, deceased, be, and the same is, hereby by this decree vested in Grace Clow in fee simple and absolute, and further vesting all legal and equitable title whatsoever in the plaintiff. It was further ordered and decreed that the defendants are personally enjoined from

claiming, holding, or asserting any power or authority over or concerning said lands or premises or from making, executing, or delivering any conveyance of said property and in any manner interfering therewith.

The court found, among others, the following facts:

"That plaintiff is an heir at law of B. G. Clow, deceased, now of the age of 36 years, and from the year 1890 until the death of B. G. Clow plaintiff resided with the said B. G. Clow upon said premises, at his solicitation and request. That plaintiff had a joint equitable possession of said premises with B. G. Clow from the year 1890 until his death. That plaintiff had the sole, exclusive, equitable possession of said premises from the death of B. G. Clow on January 19, 1902, until the appointment of N. H. West as administrator on February 11, 1902. That in July, 1890, or thereabouts, the plaintiff, Grace Clow, expressed her intention to B. G. Clow to leave said ranch, to make her living elsewhere. That at the time plaintiff informed B. G. Clow of her intention to leave said ranch in July, 1890, or thereabout, B. G. Clow made and entered into an oral agreement with the plaintiff, Grace Clow, that if she would remain with himself and wife on said Home Ranch, and assume control and management of his household and domestic affairs, and counsel and assist him in the management and conduct of his business affairs, and act as his adviser, counselor, amanuensis, and confidante until the death of himself and wife, she should then have and become the absolute owner of said premises, improvements thereon, water, and water rights connected therewith, subject to a life estate in B. G. Clow and his wife; and that he would, prior to his death, convey the same to plaintiff, or that, if he failed to so convey in his lifetime, he would cause the same to be conveyed to her by his last will and testament; and that said agreement is the same agreement set forth in plaintiff's complaint herein. That Grace Clow consented to and relied upon said agreement and remained upon said ranch, performing personal, domestic, and other services for B. G. Clow from July, 1890, until his death

on January 19, A. D. 1902. That the wife of B. G. Clow died about two years prior to his death. That the personal, domestic, and other services rendered by Grace Clow to B. G. Clow from July, A. D. 1890, until his death on January 19, A. D. 1902, were wholly referable to and pursuant to the said agreement made between them in July, A. D. 1890. That, upon the death of B. G. Clow, Grace Clow had fully performed her agreement with B. G. Clow. That the services so rendered to B. G. Clow by the plaintiff were not by B. G. Clow intended to be paid for by a money consideration, or any consideration other than the conveyance of said premises to Grace Clow by the said B. G. Clow by his deed, or by his last will and testament. That Grace Clow has ever since the death of B. G. Clow remained upon said ranch, occupying it as her home, and in the equitable possession thereof subject to the statutory possession of N. H. West as administrator. That the services rendered by plaintiff to B. G. Clow were largely of a peculiar personal nature, incapable of being estimated in damages. That N. H. West, as administrator supervising the farming of said ranch and the gathering of the crops thereon each season since the death of B. G. Clow, paid the expenses thereof, and paid all taxes due thereon. That all the acts and doings of said N. H. West, pertaining to said premises, were done pursuant to his duty as administrator, and not otherwise."

Certain other findings were requested by counsel for defendants which it will not be necessary to set out, as the questions thus presented will be discussed later in the opinion.

The first question in logical order to be considered is whether the defense of *res adjudicata* can be sustained. It appears from the finding requested by defendants and allowed by the court that, prior to the institution of the present action, a suit upon the same alleged oral contract was instituted against the same defendants; that an answer to the complaint was filed, and that the case proceeded to trial before the court with the aid of a jury;

that the plaintiff submitted her proofs and rested her case; that thereupon the defendants moved the court to withdraw the suit from the jury and have a judgment of nonsuit; that upon such motion the following order was entered: "The motion of defendants to withdraw the jury and discharge the jury was ordered granted. The motion for nonsuit was granted, and it was ordered that the case be dismissed."

[1] The order for nonsuit and the dismissal of the action is not a judgment upon the merits and not a bar to a subsequent action. (*Laird* v. *Morris,* 23 Nev. 34, 42 Pac. 11.) See Nevada Digest, p. 628, cases citing Laird case; 14 Cyc. 393.

[2] It is well settled that a contract such as is sued upon in this case is not within the statute of frauds, and this phase of the case will be given no further consideration than the citation of the following authorities: *Cory* v. *Hyde,* 49 Cal. 471; *Development Co.* v. *Thornburg,* 46 W. Va. 99, 33 S. E. 108; *Berg* v. *Moreau,* 199 Mo. 416, 97 S. W. 901, 9 L. R. A. n. s. 157.

[3] We think, also, that there is no merit in the contention that this action is barred by the statute of limitations. Conceding, for the purpose of a consideration of this question, that the agreement was sufficiently proven and fully complied with upon the part of plaintiff, her title to the property vested immediately upon the death of B. G. Clow. Her equitable title to the property was complete at that time. She remained in possession under claim of title up to the time of bringing suit and the trial of the cause. Any assertion of right of possession or exercise of control by the defendant West, by virtue of his authority as administrator, did not affect her possession and would not affect her right of possession. This is not a case or an action founded upon an agreement not in writing, where there has not been full performance of the contract upon the part of the party seeking relief, but is an action to establish a full, legal title, where the full, equitable title is already vested in the party in possession, and where the equitable title is

such that the full, legal title ought in equity and good conscience to be vested in the holder of such equitable title. It is well settled that the statute of limitations does not run against the holder of the equitable title in possession. (*Love* v. *Watkins,* 40 Cal. 548, 6 Am. Rep. 624; *Gerdes* v. *Moody,* 41 Cal. 335; *Day* v. *Cohn,* 65 Cal. 509, 4 Pac. 511; *Smith* v. *Matthews,* 81 Cal. 121, 22 Pac. 409; *Luco* v. *De Toro,* 91 Cal. 405, 18 Pac. 866, 27 Pac. 1082; *Fleishman* v. *Woods,* 135 Cal. 257, 67 Pac. 276; *Kane* v. *Bloodgood,* 7 Johns. Ch. N. Y. 90, 11 Am. Dec. 417; *Lakin* v. *Sierra Buttes G. M. Co.,* 25 Fed. 344; *Faucett* v. *Faucett,* 85 Wis. 338, 55 N. W. 405, 39 Am. St. Rep. 847; *Pinkham* v. *Pinkham,* 60 Neb. 611, 83 N. W. 837; *Warren* v. *Adams,* 19 Colo. 525, 36 Pac. 604; *Snider* v. *Johnson,* 25 Or. 331, 35 Pac. 846; *Railway Co.* v. *Hay,* 119 Ill. 493, 10 N. E. 29; *Edwards* v. *Beck,* 57 Wash. 80, 106 Pac. 492; note, 12 Am. Dec. 373.)

[4] The case resolves itself to the primal question as to whether the evidence is sufficient to establish the alleged oral agreement and its full execution upon the part of the plaintiff. The sufficiency of the evidence in this respect must be determined from the material testimony of the following witnesses:

Mrs. Mary Sessions, a witness for the plaintiff, testified that she had known B. G. Clow, deceased, for many years prior to his death; that in the year 1897 she was in Clow's employment for about six months. Relative to a conversation had with the deceased, the witness testified:

"Why, he told me that he wanted the place to go to Grace. And he said that she lived with them so long and helped to take care of them, and that she wanted to leave him when she finished her education and he didn't want her to. He wanted her to stay there and stay with them. He said that they were getting along in years and getting kind of old, and he wanted she would stay with them, and that he would see that she was, I guess, provided for, and he said that he had the place fixed so that during—if anything should happen to him it belonged to his wife. Then, when she got through with it, it went to

Grace; that it was hers. He said that he had papers made and fixed so that she would get the place; that she would have no trouble at all in getting it. And he wanted she should have it, and told me that, of a good many times.

"Q. What, if anything else, did he say about Grace's going away at that time? A. Why, all he said that she wanted to go away and make her own way, and he didn't want her to. He wanted her to stay there and be with them.

"Q. Well, state the substance of the last conversation which you had relative to the disposition of that place on the hill. A. It was just he wanted she should have the place when he and her aunt was through with it, and it was all fixed so she would get it without any trouble at all."

Mrs. M. E. H. Riley, a witness for the plaintiff, testified that she had known B. G. Clow, deceased, for more than twenty years and knew the property in controversy; that she had had conversations with Clow relative to his agreement with his niece, Grace, respondent herein, both before and after the death of Mrs. Clow. The witness testified relative to a conversation with Clow, while the latter was at her home, as follows:

"When he came to see me, I said, 'How is Grace and the family?' He said, 'Nicely.' He says: 'Grace thinks she will go away and do something for herself, but I cannot part with her. I cannot spare her. She has did everything here for the past ten years, tended to my business and writing, and what could I do without her? I have told Grace and agreed with her that, if she would stay with us during our lifetime, this place on the hill should be hers. That, when Mary came back from China, she would have some place to go and visit with Grace. And I wish her to keep Bob, that he may attend to the bushes and things for her, and when I am dead I wish her to settle with Bob.' I said, 'What will she do with that land on the hill?' 'Oh, it will come into value some day. I have provided amply for Grace, and there is something for her beside that ranch on the hill.'"

Further in the testimony of this witness appears the following:

"Q. Now, what else did he say, if anything? A. I said, 'Mr. Clow, you will have to make a will to that effect.' He said, 'I have.'

"Q. Say anything more about the will? A. He told me that J. B. Williams did his writing and will, and that Mr. Frank Porter, formerly county clerk here, has signed that will, sir. * * *

"Q. What was said about the time that agreement was entered into, if anything? A. He said, 'All the rest has left me but Grace, and what can I do without her.'

"Q. What was said about the time that agreement was entered into, if anything? A. Said: 'Grace has lived with me all these long years, and what could I do without her? She tends to my domestic affairs and my correspondence, and I can't spare Grace.'

"Q. When did that take place? What time did that take place? A. It was about ten years since. He says: 'If I died first Mrs. Clow will give that property to Grace. If she dies before me, I intend that property for Grace. I have agreed with her and told her that she shall have it.' * * *

"Q. Yes. Now, can you remember the dates you had the second conversation with him? The year? A. He talked to me considerably about it after Mrs. Clow died.

"Q. Yes. Now, tell us what he said in that conversation that you had with him after Mrs. Clow died? A. He talked to me of Grace there at the ranch, and I said, 'Is she with you?' 'Oh, yes,' he said. 'She is to —' 'I can't do without her; she must stay there. She tends to all my domestic affairs and my writing, and everything I require of her, and I have agreed with her if she will remain with me'—then it was only Barney—'as long as I live, she shall have the place on the hill. It will be some place for Mary to come to when she comes from China, and I know I owe Bob, and I wish her to settle with Bob, and keep him there. He can attend to those shrubs for her.' I said: 'Mr. Clow, you will have to make a will to

that effect, or there will be trouble when you are dead.'
He says: 'I have long ago. J. B. Williams did that for
me, and Mr. Frank Porter, then county clerk here, signed
that will.' He said: 'I have provided handsomely for
Grace beside that, beside the property on the hill, for I
wish her to pay Bob.' "

Mrs. Martha Hayman testified that she knew B. G.
Clow, deceased, in his lifetime. Relative to a conversa-
tion had with B. G. Clow, deceased, during his lifetime at
the latter's home, the witness testified:

"And we sat there and talked for a solid hour about his
business and my business, because I had always went to
him for my counselor, what to do and how to do. And
when I went, he walked up to the house with me. He said
he was feeble; he wasn't able to do much, and he says, 'I
don't know how much longer I am going to live.' And I
said, 'You don't think you are going to die?' And he said,
'I don't feel well.' And he says, 'You better get what you
are going to get and put out this fall,' he says, 'because
the place belongs to Grace at my death.' And he says,
'Grace might not be as good to you as I am,' and laughed.
And I said 'What is the matter with the others?' And he
says, 'There is no others.' He says, 'We agreed to give
this place to Grace a long time ago, for to be hers and her
own, and to do with it whatever she wants to, after we
are dead and gone.'

"Q. Now, Mrs. Hayman, tell us all about that conver-
sation you had with Barney Clow relative to the disposi-
tion of that property on the hill and what was said in
that conversation relative to Grace Clow. A. Well, the
time I spoke about his telling me, he told me that evening
about making the deed to Grace, and I said to him, 'Is it
recorded?' And he says, 'No, but I will attend to that,
because,' he says, 'you know, madam, they can break a
will but they can't a deed.' He says, 'I agreed to give this
place to Grace, this home place,' and he stamped his cane
down, 'This home place to Grace.' I says, 'What about
the rest of them?' He says, 'They have got theirs and
gone. This is for Grace for her own self, and she can

do whatever she pleases with it after I am dead and gone.'
'But,' I said, 'Mr. Clow, deed the place to Grace. Suppose
she gets married and they would run you off the place.'
He says, 'It is not recorded, and,' he says, 'I am not afraid
of Grace running me off of the place.'"

Mrs. Jane Lakin, a witness for the plaintiff, testified,
among other matters, to the following:

"Q. Now, I will ask you to state to the court and jury
fully, as near as you can remember, what that conversation was? A. Well, I came up to get some berries, and
Mr. Clow was at home, and he says, 'Mrs. Lakin, you will
have to see Grace, and she ain't at home,' he says, 'she is
down town,' and he says, 'I gave the home up to her to
make her living off of it, and I got it fixed so it is her
home now, and you will have to get the berries from
Grace.' He says, 'You can wait; I don't think it will be
extra long when she comes back.' I says, 'I will wait a
little while,' but I turned around and got in the buggy
and came back home. I didn't see her afterward. That
is what he told me; that he gave the home to Grace to
make her living off of it."

Miss Isabel Clark, a witness for the plaintiff, testified
to an acquaintance with B. G. Clow, deceased, in his lifetime; that she had visited his home at Reno; and that at
one time she had a conversation with Clow concerning
which she testified as follows:

"Well, the sum and substance of that conversation was
Mr. Clow said that when he was done with the property,
everything was Grace's and he had got it arranged so
that she would have no trouble in holding it."

Mrs. J. W. Frazer, witness upon the part of plaintiff,
testified that she had known that the plaintiff, Grace
Clow, resided with her uncle, B. G. Clow, deceased, from
the year 1890 to the time of the latter's death in 1902;
that she visited the Clow ranch frequently between those
dates. Relative to conversations had with B. G. Clow in
his lifetime, she testified as follows:

"Well, the first conversation, those following were very
similar, to the effect that Mr. Clow, when he was through
with the property there, the home place, the Clow ranch,

or whatever you might term it, when he and his wife was through with it, that property in full, everything there, was to belong, or be exclusively, or whatever word you mind to term it; it was to belong or be Miss Grace Clow's, his niece.

"Q. Mrs. Frazer, were you present at any time when an oral agreement was entered into between Barney Clow in his lifetime and Grace Clow? A. I heard them have a conversation in regard to it, on that line. Simply amounting to just what I have stated in regard to Grace Clow's having that property. I heard Mr. Clow in conversation talking with her."

It appears from the testimony that the plaintiff went to reside with her uncle, B. G. Clow, deceased, about the year 1878; that two or three sisters and a brother also went to reside with him at that time; and that the plaintiff resided continuously with her uncle until his death in 1902. There is a great deal of testimony in the case that, from the year 1890 until the death of B. G. Clow, the plaintiff looked after the household affairs of the deceased, assisted him in his business affairs, attended, nursed him in times of illness, and in all such ways was exceptionally devoted to his physical, personal, and business welfare. A daughter could not have been more devoted to the interests and welfare of her father than the evidence shows Grace Clow to have been to her uncle.

Counsel for appellant state the law to be:

"In cases where it has been sought to obtain a decree against the heirs and representatives of deceased parties, where the consideration named in the contract was in the nature of personal services, and no possession had been given and no improvements made, and where the services had been performed fully and completely by the plaintiff, that a decree in favor of the plaintiff could be justified upon a showing that there had been such a change in the conditions of the life of the plaintiff, by reason of the performance of the contract, as would render it inequitable and unjust to refuse to specifically enforce the contract."

We think the evidence in this case brings the plaintiff

within the rule asserted by counsel for appellant. Besides, it can hardly be said that possession was not given to the plaintiff. It cannot, we think, be said that there was no showing that plaintiff had not so changed her conditions by reason of the contract as would render it inequitable and unjust to refuse to specifically enforce the contract. Certainly when a young woman, 19 years old, gives twelve of the best years of her young life in caring for, aiding, and comforting an aged couple, not her own parents, she has made a very substantial change in the usual conditions of a young woman.

As is said in *Bryson* v. *McShane*, 48 W. Va. 126, 130, 35 S. E. 848, 49 L. R. A. 527; 36 Cyc. 674:

"There are some services that are incapable of valuation in money; as to these the law permits individuals to make their own contracts. Old age is naturally repulsive. The hair grows gray, the eyes sunken, the skin wrinkled and brown, the flesh shrunken, the figure bent, the limbs weak and trembling, the will feeble, the tongue garrulous, the mouth toothless, the mind wandering, the habits careless and filthy, accompanied oftentimes with loathsome diseases needing all the care and attention of childhood, without its purity, loveliness, and affection as a compensation. To meet this condition of life, a kind Providence has ordinarily provided the ties of blood and marriage and parental, fraternal, and filial affection with their reciprocal duties and obligations of mutual care and support.  *  *  * "

Plaintiff submitted to the jury the question, "Did Grace Clow change her condition in life beyond recall by remaining on said ranch?" To which the jury returned their answer, "No." This particular finding was not embodied in the findings subsequently made by the court. Just what was meant by the words "beyond recall" we do not fully comprehend, and we think the question was misleading to the jury, for no such rule is required to support specific performance in a case of this kind. In any event, it would be impossible to "recall" twelve of the best years of a young woman's life spent in devotion to an aged

couple, as is shown to have been in this case. It cannot be said, we think, that there is not sufficient evidence to support the findings and the judgment. (*Van Duyne* v. *Vreeland,* 12 N. J. Eq. 142; *Brison* v. *Brison,* 90 Cal. 324, 27 Pac. 186; *Kelley* v. *Devin,* 65 Or. 211, 132 Pac. 535; *Berg* v. *Moreau, supra; Best* v. *Gralapp,* 69 Neb. 811, 96 N. W. 641, 99 N. W. 837, 5 Ann. Cas. 491, and authorities therein cited; Pomeroy, Specific Performance, sec. 114; 36 Cyc. 674.)

Judgment affirmed.