# CHARLESTON.

HUNTINGTON & KENOVA L. D. CO. v. THORNBURG *et al.*

Submitted January, 19, 1899—Decided March 25, 1899.

1. SPECIFIC PERFORMANCE—*Parol Contract—Sale of Land.*
   A court of equity will not enforce a parol contract for the sale of land unless the terms thereof are made certain and definite, and in all respects placed beyond the bounds of mere conjecture by full and clear proof.  (p. 104)

2. SPECIFIC PERFORMANCE---*Parol Contract—Sale of Land.*
   A plaintiff seeking specific performance of such parol contract must rely upon his own acts of part performance, and not on the repudiated acts of the defendants, or the person under whom the defendants claim.  (p. 104).

3. SPECIFIC PERFORMANCE—*Possession—Constructive Possession.*
   Possession, to be sufficient to sustain a suit for specific performance of a parol contract, must be actual, open, notorious, exclusive, and continuous under the delivery of the plaintiff.  Constructive possession of vacant town lots is not sufficient.  Such possession remains with the legal title.  (p. 105).

4. WITNESSES—*Competency—Corporations—Officers.*
   Persons who are directors and stockholders of a corporation are incompetent to testify against the administrator and heirs at law of a deceased person in favor of such corporation as to any communication or transaction had with such deceased person in their official capacity  as such directors, unless such administrator and heirs at law are examined as to such communication or transaction in their own behalf or the testimony of such deceased person touching the same  is given  in evidence.  (p. 104).

Appeal from Circuit Court, Cabell County.

Bill by the Huntington & Kenova Land Development Company against John Thornburg and others.  Decree for defendants, and plaintiff appeals.

*Affirmed.*

VINSON & THOMPSON, for appellant.

RANKIN WILEY and T. W. PEYTON, for appellees.

DENT, PRESIDENT:

The Huntington & Kenova Land Development Company filed its bill and amended bill against the administrators and heirs of J. N. Thornburg, deceased, in the circuit court of Cabell County, seeking to enforce specific performance of an alleged verbal contract partly performed. The court, at the hearing of the case, refused the relief sought; hence this appeal. The allegation of the bill in relation to the matter is as follows:

"That on the 1st day of August 1891, it was seised and possessed by a good fee-simple title of the following described lots or parcels of land, situated in Central City, Cabell County, West Virginia, and designated upon the map of said Central City, recorded in the office of the clerk of the county court of Cabell county, West Virginia, to-wit: Lots Nos. 4, 5, 6, 7, in block No. 50; lots Nos. 15, 17, 18, in block No. 59; lots Nos. 6, 7, 8, in block No. 49; lot No. 21, in block No. 22; lot No. 3, in block No. 73; lot No. 23, in block No. 113; lot No. 17, in block No. 85; and also the following described real estate, situated in Kellogg, Wayne County, West Virginia, and designated on the map of the said Kellogg, filed in the office of the county court of said Wayne County, to-wit: Lot No. 1, in block No. 61; lot No. 21, in block No. 15; lot No. 21, in block No. 97; lot No. 5, in block No. 61; lot No. 27, in block No. 105; lot No. 29, in block No. 88. And, we being so seised and possessed of said real estate, plaintiff bargained and sold the same to T. H. B. Thornburg (then in full life) for the sum of twenty-seven hundred dollars ($2,700.00) by verbal contract. That the said Thornburg, in his lifetime, took possession of said lots, and each of them, and paid the taxes thereon up to the time of his death. That he made payments upon said purchase of said lots to the plaintiff as follows, to-wit, on November 2, 1891, $600; on July 12, 1893, $600; and that this was all that was ever paid by the said Thornburg in his lifetime, or by his administrator since his death, or by any of his heirs, or by any one else for him or them; and that there is now due and unpaid to

the paintiff upon the purchase money of said lots the sum of one thousand eight hundred and forty-six dollars and fifty cents, with its interest. Plaintiff is advised, and therefore alleges, that it has a lien upon the lots of land aforesaid for the unpaid purchase money due thereon, and that it has a right to have the said lots of land sold in satisfaction of its lien. The plaintiff here tenders a deed in compliance with said contract of sale; that plaintiff is entitled to a specific performance of said contract, or a sale of said land. It further alleges that the purchase of all said lots was made at the same time, and is one entire and complete transaction.." The allegation of the amended bill is as follows: "Plaintiff further says: That on the 1st day of August, 1891, it was seised and possessed of a good fee-simple title of the following described lots or parcles of land, situate in Central City, Cabell County, West Virginia, and designated on the map of said Central City, recorded in the office of the clerk of the county court of Cabell County, West Virginia, to-wit: Lots Nos. 4, 5, 6, and 7, in block 50; lots Nos. 16, 17, and 18, in block 59; lots Nos. 6, 7, and 8, in block 49,—in Central City, Cabell County, West Virginia; and, being so seised and possessed of said real estate, the said T. H. B. Thornburg, then in full life, purchased said lots from this plaintiff, agreeing to pay therefor the price of $300 per lot, less 10 per cent., making, net, $2,700. This agreement was by parol at the time it was entered into, and afterwards it was ratified and approved by a written memorandum made by the said T. H. B. Thornburg, which is filed herewith as a part of this bill, marked 'Exhibit No. 2.' That the said Thornburg, in his lifetime, took possession of the said lots, and each of them, and paid the taxes thereon up to the time of his death. That he made the payments on the purchase of said lots to the plaintiff as follows: On November 2, 1891, $600; on July 12, 1893, $600; and that these were all the payments that were ever made by the said Thornburg in his lifetime, or by his administrator since his death, or by any of his heirs, or by any one else for him or them; and that there is now due to the plaintiff upon the said purchase money of the said lots the sum of $1,846.50, with its interest." The allegation of the answer to the bill is as

follows: "These respondents say it is not true, as alleged by plaintiff, that it, the said plaintiff, bargained and sold the said lots in Central City and Kellogg, as set forth in plaintiff's bill, to T. H. B. Thornburg in his lifetime, for the sum of $2,700, by verbal contract. They expressly deny that said T. H. B. Thornburg, in his lifetime, took possession of said lots, and each of them, and paid the taxes thereon up to the time of his death. These respondents say that the said plaintiff issued stock of its company, known as 'allotment stock,' at the par value of $100 per share, whereby it agreed with the purchasers of said allotment stock to convey by good and sufficient deed of general warranty, free from any and all incumbrances whatever, one lot of land as laid off by said company upon the plats of said Central City and Kellogg, as aforesaid; for each and every two shares of such allotment stock purchased by any and all persons; and these respondents now allege and charge that their intestate, T. H. B. Thornburg, possessed twenty (20) shares of the said allotment stock issued by the plaintiff, and paid for the same in full, whereby he became entitled to ten (10) lots, which were assigned to him and for which although fully paid for he did not receive a deed in his lifetime nor has any deed been made for the same to his heirs at law since his death. These respondents further say that in the year 1891 T. H. B. Thornburg, then in life, made a verbal contract for the purchase of ten (10) lots of land in the town of Central City which were at the time of this contract selected by him and the price thereof fixed at $2,400, $1,200 of which was to be paid in cash, and the other $1,200 to be paid in allotment stock, which had theretofore been issued by the plaintiff, and $20,000 of which had been subscribed and paid for by the said T. H. B. Thornburg. These respondents further say that the said T. H. B. Thornburg did pay upon asid purchase of said 10 lots on November 2, 1891, $600, and on July 12, 1893, $600, making the $1,200 in money that he had agreed to pay at the time of said purchase; that these defendants deny that there is now due and unpaid to the plaintiff upon the purchase money of said lots the sum of $1,846.50, with its interest."

The allegation of the answer to the amended bill is as

follows: "That it is not true, as alleged by the plaintiff, that said T. H. B. Thornburg, when in life, purchased certain lots from the plaintiff, situate in Central City, Cabell County, West Virginia, as set forth by the plaintiff in said amended bill.   And it is not true that he agreed to pay therefor the price of $300 per lot less 10 per cent. making them net $2,700.   That they know nothing about any agreement to purchase said lots, or whether it was by parol, and afterwards ratified and approved by written memorandum made by the said T. H. B. Thornburg. They therefore deny such allegation, and call for strict and full proof of the same; and, if any verbal contract should be established · by the proof, the defendants expressly plead and rely on the statute of frauds.   These respondents, further answering, say that it is not true that the plaintiff has a lien on all the lots of land, as set forth in its amended bill, for the unpaid purchase money thereof, and denies that it has a right to have said lots of land sold in satisfaction of its lien, and denies its right to have a judgment over against the estate of the said T. H. B. Thornburg in the event that said lots do not bring a sufficient amount of money, when sold, to pay the costs of this suit and the plaintiff's debt.   But repsondents allege that the said plaintiff has no claim or debt against the estate of the said T. H. B. Thornburg, deceased, and is therefore not entitled to a judgment for any sum whatever."   The defendants rely on the statute of frauds.   To avoid this, the plaintiff alleges part performance by the payment of $600, possession of the lots, and the letter set up as in satisfaction thereof, in these words:   "J. L. Caldwell—Dear Sir:   I inclose you check for $600.00 to credit on purchase of lots 4, 5, 6, and 7, of block 50; 16, 17, and 18, of block 59; 6, 7, and 8, block 49.   I will also send you check for $16.40 to pay taxes as follows, per your statement:   $8.00 on Nos. 4, 5, 6, and 7, of block 50; $6.00 on Nos. 6, 7, and 8, of block 59; $1.65 on No. 17, of block 85; 75c. on No. 3, block 73.   This leaves Nos. 16, 17, and 18, of block 59; No. 23, in block 113; No. 27, in block 22,—that you have never sent statement for.   When I get able to come, will be down.   Very truly, T. H. B. Thornburg."

So far as the competent evidence, and, it might be said,

the incompetent evidence, is concerned, the terms of the contract, except by mere inference from other sales, is left entirely unproven; for while it might be inferred that the deceased was to pay three thousand dollars for the ten lots, with ten *per centum* off, yet the evidence tends to show that a part of this purchase money was payable in allotment stock. So the court is left to conjecture what the terms of the contract really were, and this conjecture is made doubly doubtful by the variance between the original and the amended bills, one being a material departure from the other, showing clearly that the plaintiff was not fully advised as to the real terms of the contract it was seeking to enforce. The lots were unimproved lots, lying open to the commons, in the actual possession of no one, and in the constructive possession of the person having the legal title, which was the plaintiff. So the question of possession is out of the case. The payment of the purchase money, in whole or in part, is not of itself such part performance as will take the case out of the statute of frauds even against the plaintiff, and is nothing in his favor. *Gallagher* v. *Gallagher*, 31 W. Va. 9, (5 S. E. 297). The letter relied on in confirmation shows nothing whatever of the terms of the contract, and is not such a paper as will avoid the statute of frauds. The evidence of the witnesses Miller and Caldwell, they being interested in the result of the controversy, is incompetent as to personal transactions and communications had with the decedent. Code, c. 130, s. 23; *Carskadon* v. *Minke*, 26 W. Va. 729. Six hundred dollars paid, a letter admitting a purchase and no more, and inferences from other transactions is all the court has on which to decree specific performance, in the face of the statute of frauds. In the case of *Campbell* v. *Fetterman's Heirs*, 20 W. Va. 398, relied on by plaintiff's counsel, JUDGE SNYDER says: "In such a case it must appear: first, the parol agreement relied on is certain and definite in its terms; second, the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; third, the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the purchaser, and place him in a situation which does not lie

in compensation at law." The parol agreement is not shown by competent evidence to be certain and definite in its terms, nor is there such performance that the refusal to execute it would operate a fraud upon either party. The plaintiff must show that an action at law for damages will not afford him adequate relief, and he must furnish clear and full proof of the contract, so that it may be enforced finally, and with due regard to the rights of all the parties concerned. Brown, St. Frauds, § 452. Again, the acts of part performance relied upon by the plaintiff must be acts done by himself. *Id.* § 450. There is no act of part performance either alleged or shown on the part of the plaintiff. Both the original and amended bills allege that Thornburg took possession of the lots, but they neither allege that the plaintiff delivered possession thereof. The plaintiff cannot rely on the repudiated acts of the defendants as part performance, but only on its own act. And such delivery of possession must be alleged and shown to have been notorious, exclusive, and continuous. A mere technical possession, not open to the observation of the neighborhood, and capable of being proved only by select and confidential witnesses, is insufficient. *Id.* §§ 472, 473. In this case there was no actual possession, as before stated, but the constructive possession remained with the plaintiff by virtue of its retaining the legal title. Hence, clearly, the plaintiff has not shown itself entitled to specific performance of the alleged contract, and, if it has any rights in relation thereto, it must seek them in a court of law. The circuit court committed no error in the decree complained of, which is confirmed.

*Affirmed.*