# WHEELING.

## KNIGHT *v.* KNIGHT.

Submitted January 23, 1902.    Decided June 7, 1902.

1.  ORAL CONTRACT—*Enforcement—Evidence.*
    To enforce an oral contract for the sale of land the evidence of the contract and its terms must not be doubtful, but full, clear and convincing.  (p. 521).

Appeal from Circuit Court, Greenbrier County.

Action by H. W. Knight against James Knight and others. Decree for defendants.  Plaintiff appeals.

*Affirmed.*

GILMER & GILMER, for appellant.

JOHN W. ARBUCKLE, for appellees.

BRANNON, JUDGE:

H. Willis Knight brought a chancery suit in the circuit court of Greenbrier County against James Knight and others, which was dismissed, and H. Willis Knight appealed.

The plaintiff claims that years ago Alexander Knight, Sr., father of the plaintiff, George Knight, Andrew Knight and

Thomas Knight were partners, and became indebted, and owning numerous tracts of mountain land, it was divided by decree, and the lands of Alexander Knight, Sr., were sold to pay the debts; that though Andrew Knight was a silent partner, he was not known on the obligations of the firm; that Alexander Knight's property having been sold for the firm's indebtedness Andrew Knight was considerably indebted to him for his share of that indebtedness. The plaintiff further claims that Alexander Knight, Sr., being owner of half of a tract of two hundred and fifty-one acres and thirty-two poles of land, in 1873 conveyed it to James and Alexander Knight, Jr., in consideration that they pay certain debts, not specified in the bill, and besides pay to Alexander, Sr., two thousand five hundred dollars; that after such conveyance Alexander Knight, Sr., removed to Missouri, but after a time returned to Greenbrier, when James and Alexander Knight, Jr., with the authority and consent of Andrew Knight, their father, in consideration of their indebtedness of two thousand five hundred dollars to Alexander Knight, Sr., for the conveyance to them of said half of the tract of two hundred and fifty-one acres, turned over said four hundred and forty-one acre tract on Spring Creek in February, 1876, in lieu of what they owed Alexander Knight, Sr., and that the plaintiff took actual possession of the four hundred and forty-one acres and he and his father Alexander Knight, Sr., lived on till 1884, when his father died, and that plaintiff had ever since continued to live upon it; that in 1876, when said four hundred and forty-one acres was turned over to Alexander and Willis Knight, there were certain unpaid judgments against Alexander Knight, Sr., as surety for Thomas Knight, and it was considered inexpedient to convey said four hundred and forty-one acres to Alexander, but that Andrew Knight all his life-time after 1876 admitted that the land had been, with his consent, turned over to Alexander Knight, Sr., as part of the consideration for the conveyance for the half of the two hundred and fifty-one acre tract conveyed by Alexander Knight, Sr., to James and Alexander Knight; that in 1898 James and Alexander Knight and Rachel E. Kincaid, as heirs of Andrew Knight, deceased, brought an action of ejectment against H. Willis Knight for the possession of said four hundred and forty-one acres, whereupon H. Willis Knight brought the chancery suit to enjoin the prosecution of said ejectment, and to compel

said heirs of Andrew Knight to convey to him the legal title to the land, which suit was dismissed, as above stated.

This case involves no points of law necessary to be printed, but only questions of fact.

The plaintiff seems, but indefinitely, to rely upon the theory as a part of the consideration of the purchase of the four hundred and forty-one acres, that its owner, Andrew Knight, owed Alexander Knight, Sr., a debt for money paid by Alexander for Andrew as Andrew's share of a partnership indebtedness; but the evidence fails to prove that partnership.

A stray expression of Andrew, vague and indefinite, is proven in an unsatisfactory manner, tending to show a partnership; but when we ask, of what date was the partnership, in what business, what its terms, there is not a particle of evidence to answer. I see no sign of partnership save in lands, and that is joint ownership, not partnership, and it is not shown that the indebtedness related to that. This partnership utterly fails as a consideration for the alleged sale of the four hundred and forty-one acres.

The main reliance of the plaintiff for a consideration for the sale of the four hundred and forty-one acres is that when Alexander Knight, Sr., conveyed to James and Alexander Knight his half of the two hundred and fifty-one acre tract, James and Alexander undertook to pay certain debts, and besides pay Alexander Knight, Sr., two thousand five hundred dollars. What debts were to be paid is not disclosed. The version of the plaintiff and defendants as to their transaction are involved in radically contradictory evidence. The burden is upon the plaintiff to prove the contract of sale of the four hundred and forty-one acres by Andrew to Alexander Knight, Sr., and as the consideration of that contract the burden is upon the plaintiff to prove this two thousand five hundred dollar debt The plaintiff swears to his version. James and Alexander Knight flatly deny it under oath, and say that they themselves had paid, as sureties for Alexander Knight, Sr., some five thousand dollars and that of this three thousand dollars was consideration for the conveyance to them by Alexander of his half of the two hundred and fifty-one acres; and they clearly show, by receipts and oral evidence of A. F. Matthews that they did so pay debts of Alexander, and thus plainly have the better of the plaintiff as to this matter. The evidence fails to establish this debt.

Furthermore, there were two suits of *McClintic* v. *Alexander Knight, Sr.,* and *Dunn* v. *Same,* after the conveyance of Alexander to James and Alexander, and James and Alexander were parties, and were garnishees as debtors of 'Alexander Knight, Sr., and they were discharged as not so indebted, and not only that, but they were decreed a debt of one thousand nine hundred and fifty-two dollars and forty-eight cents against him. These' suits and the decree therein were after said conveyance, and must serve to show that no such indebtedness of two thousand five hundred dollars as alleged by the plaintiff existed against James and Alexander Knight. This consideration for the al- leged sale contract fails. This is only another of many instances where we are urged to disregard the statute of frauds upon frail, inconsistent oral evidence, at least full ·of doubt and inconclusive in character, carrying no conviction. There is not a scratch of a pen to attest the contract, not a note taken for this large alleged balance of two thousand five hundred dollars of purchase money. Strange, indeed. How are we to explain the fact? I would answer, from the evidence, because there was no contract, no such debt.· If there were, then the bill says no conveyance was made because there was some judgment against Alexander Knight, Sr., and it was deemed expedient then to pass the title. Then, we have the case of land belonging to Alexander and title concealed in Andrew to defeat creditors. This would forbid relief to Alexander and likewise to his son, the plaintiff. I do not see but that this feature of the plaintiff's case, on the face of the bill defeats the plaintiff.

Another view against the plaintiff is the space of more than twenty-two years between the alleged sale and this suit. Not that it is a bar by statute, or by *laches;* yet it affords a very strong circumstance to repel ·the theory of a sale by Andrew to Alexander of the four hundred and forty-one acres. Why would Alexander the plaintiff let so many years pass without a deed? They are never once heard asking a deed in all this time. It then was no sale; how does it come that this debt of two thousand five hundred stands so long without demand of payment? It is not claimed that any such demand was made.

It is strongly ·confirmatory of this view that neither Alexander Knight, Sr., nor the plaintiff ever paid a cent of taxes on the four hundred and forty-one acres. James and Alexander Knight paid taxes from 1876 to 1898 inclusive amount-

ing to seven hundred and forty-five dollars and fifty-one cents. If the land belonged to the plaintiff or his father before him, would they not have paid taxes? Would Alexander and James have paid them? The truth is the plaintiff recognized the title of the defendants several times, talked of buying the tract or a part of it. True, he says he did so before he learned of certain evidence going to sustain his claim; but this is an inadequate explanation; for if he had a real claim, and knew he had it, he would not have thus recognized the title of Alexander and James Knight. The truth is, this claim of the plaintiff only arose when James and Alexander Knight demanded the land to sell it, and it is only another instance of many thousand of wails of unfortunate poverty crying for relief upon hopeless grounds. Judges may sympathize with the unfortunate poor, as we do in this instance where a poor man is to loose the roof over his head; but Judges must follow law, though it may seem hard. In such a case the law demands full clear proof. It is true that it may be said that the fact that the plaintiff has been so long in undisturbed possession affords some confirmation of his claim, but this admits of explanation. The tract is a poor mountain farm, of only a few acres open, scarce enough to give a scant living to its occupants, of no rental value, valuable only for timber to the defendants. Alexander Knight, Sr., in the gloom of insolvency and poverty, went to Missouri in old age, and failing of success then returned to Greenbrier and was allowed to go upon this mountain tract by the kindness of his brother Andrew, to work out a poor living and he dying there, his son, who had also gone to Missouri and returned equally poor, was allowed by his uncle and cousin to still continue there. He was simply a tenant by sufferance, or by kindness of heart, as is clearly proven. All improvements upon the tract in these long years was merely nominal. A board roof on the little house hardly sufficient to turn off the rains of Heaven, and a few acres cleared to raise a little corn and vegetables. This slight improvement, if worthy of even name, tells strongly that the plaintiff knew he had no title. In nearly a quarter of a century he would have done more, if the owner. It is proven that he declared to his father that he would not wear himself away in improving the land of others, thus showing that he well knew he had no title.

There is something said in briefs about competency as a wit-

ness of Matthews. It is immaterial. His receipts show payments; but why he is not competent to prove payment of debts by James and Alexander Knight I do not see.

Complaint is made that the court allowed defendants to file an amended answer. It may be that according to the rule stated in *Foulty* v. *Poar,* 35 W. Va. there is a technical objection to this action of the court as the answer introduced matter well known at the time of filing the original answer, but shall we reverse for that cause? This amended answer introduces the record of the Dunn and McClintic suits. If introduced as evidence, it would have the same effect as if put in by an answer. Besides, without that answer or record the plaintiff's case was not sufficient for relief.

I do not see how the circuit court could have done otherwise than it did, dismiss the bill. Therefore, we affirm its decree.

*Affirmed.*