OF THE

# SUPREME COURT OF APPEALS

OF

# WEST VIRGINIA

CHARLESTON

BELL *v.* WHITESELL.

Submitted September 6, 1907.  Decided March 3, 1908.

1. SPECIFIC PERFORMANCE—*Sale of Land—Oral Contract.*
    It is well settled that an oral contract for the sale of land will not be specifically enforced in equity unless such contract is admitted or established by full, clear and convincing evidence.  (p. 5.)

Appeal from Circuit Court, Randolph County.

Bill by Samantha Bell against E. W. Whitesell.  Decree for defendant, and plaintiff appeals.

*Affirmed.*

CUNNINGHAM & STALLINGS, for appellant.
DAILEY & BOWERS, for appellee.

McWHORTER, JUDGE:

This was a suit by Samantha Bell against E. W. Whitesell filed in the circuit court of Randolph county for the specific performance of an oral contract for the purchase by the plaintiff of a lot of one acre of land in said county.  The bill alleged that plaintiff, through her husband George H. Bell, began negotiations with said Whitesell to purchase from him said one acre of land; that Whitesell and Bell went upon the land and made the agreement of sale; that said Whitesell

insisted that the property was worth $60 but if plaintiff would permit a condition in the deed restricting and prohibiting the sale of intoxicating liquors upon the property he would accept $50, to which plaintiff agreed. That Whitesell then caused the lot to be surveyed by I. T. Kile and placed plaintiff in possession of the lot with the understanding that she would cause to be left with his brother, Harmon Whitesell, a check for the cash payment agreed upon and that she did cause a check to be left with said Harmon for the sum of $—; that Whitesell was then to execute to her a deed for said property free from all encumbrances except said restriction and to contain certain privileges thereinafter set forth; that defendant returned the check with a refusal to comply with his contract and to execute a deed for the reason set forth in his letter of October 22, 1904, wherein he states: "I saw my lawyer and I thought it best not to sell the lot as it might cause me more trouble than I could get for it." That plaintiff had gone into possession of said lot and made improvements thereon and at no time had relinquished her purchase or given up possession, that she still was in possession; that under the agreement, when she was placed in possession, she was to have the right of a road through the other lands of said Whitesell to the county road and that she was to have the use of a spring on his land just above said one acre lot without charge for either of said privileges; and filed with her bill a copy of the survey made of said lot and prayed for a decree compelling specific performance on the part of defendant by conveying the same to her as well as for the right of way to the county road from said lot and the use of the spring above and near said lot; and upon the payment of the purchase money by plaintiff and the refusal of defendant to make such deed that the court appoint a special commissioner to execute the same, and for general relief.

Defendant filed a demurrer to said bill which was overruled. The defendant then filed his answer denying all the material allegations of the bill; denying that he had sold to the plaintiff the lot of land described in the bill or any other lot of land, or that he had put plaintiff in possession of said land as a purchaser or otherwise under any contract for the sale of the same, or that he allowed her to take possession; and denied that she had made any improvements thereon.

Defendant admitted that there were at one time negotiations between him and George H. Bell, the husband of plaintiff, looking to the sale of a lot of ground by him to the said Bell, and while respondent did at one time, as shown by the letter filed with plaintiff's bill offer to sell to said G. H. Bell a lot of one acre of land, no sale was ever made under such offer and said offer specified no particular acre of land that would be sold. That while it was true that an acre of land was run off or surveyed pending negotiations between respondent and G. H. Bell said acre was never sold to G. H. Bell or Samantha Bell and neither of them was ever put in possession thereof. That on the day the survey was made, or the following day, before respondent left the neighborhood of the land for his home in Grant county, he expressly and positively told said Bell that he (respondent) was in doubt whether or not he would sell the parcel of land, and that Bell instead of claiming that he had already bought the lot recognized the fact that he had not done so and asked respondent to let him know as soon as he had determined the question whether he (Bell) could have the lot, which information respondent promised to give him as soon as he finally determined the question and in accordance with this promise he wrote the letter to Bell of October 22, 1904, filed with plaintiff's bill.

Depositions were taken and filed in the cause which was finally heard on the 21st of November, 1906, when the court found the issue for the defendant and dismissed plaintiff's bill with costs. From which decree the plaintiff appealed and says the court erred in not decreeing specific performance of said contract. The evidence taken and filed in the cause is very conflicting and fails to establish on the part of the plaintiff any definite or certain contract for the sale of the lot. The negotiations were altogether between G. H. Bell, husband of plaintiff, and the defendant. Bell claims to have been placed in possession of the lot and to have made improvements thereon. Touching the possession, in his testimony, Bell states in answer to the question, "You may state whether you still have possession of that lot or parcel of land?" "I have been on it every month or every few days." As to the improvements made by him he states in his testimony when asked what he had done on the property, "I cut

laurel and chopped up a right smart stuff around there, cut brush," and said "I cleaned up a place to build me a house but the railroad company has destroyed it now." On cross-examination, said he had not enclosed the lot by fence or otherwise and when asked what amount of work he did on the lot he said he had "cleaned it off a right smart, maybe 30x50 feet," and that he had worked there the best end of a day. Another witness, William McGinnis, who lived near to the property was asked: "What improvements did Mr. Bell make on the lot during the time you resided at Lanesville" and answered, "He cut and removed some laurel in the lower corner of the lot. May have burnt some, attempted to burn some anyhow, I saw the smoke there." This is about the extent of the improvements made by Bell on the property. McGinnis further testifies that Bell was working for him at whatever he had for him to do and that Bell had some talk with him about the purchase of said land, and further testified as follows: "Q. Please state, as well as you recollect, what was said by Mr. Bell to you about this purchase? A. Well, he got off from work one day for to do some improvements on this land, and to go into details of what he said I can't remember. Q. What explanation if any did he make to you about his going to work on this land at the time he asked to get off? A. His explanation was, as I understand, that as he had some doubt about getting a title to this land, and he wanted this labor to hold as a claim so that he could sue for a deed." Mr. Kile, the surveyor, testifies as to a conversation between George H. Bell and the defendant. He says he supposed there was a sale because they were having the work done (meaning the surveying), but he has no definite recollection concerning it.

When defendant left for his home in Grant county, the trade had not been consummated. Defendant had not fully decided to sell the lot, but was to inform Bell when he concluded whether he would let him have it or not; and on the 22nd day of October, 1904, defendant wrote the letter of that date, filed as an exhibit with plaintiff's bill, which letter contains defendant's ultimatum when he says: "I saw my lawyer, and I thought it best not to sell the lot, as it might cause me more trouble than I could get for it." Defendant seemed to be of the impression, which was probably well founded :

that Bell wanted the lot to use for a place to sell intoxicating
drinks and Bell said he would take it with a restriction or
prohibition of that kind as he said he did not want it for that
purpose; but says in his testimony that he told defendant that
he "would give him $60 and not make it (the deed) in that
way." Defendant was not sure that he could make a restriction
of that sort that could be enforced, so he withheld his decision
as to selling to him until he returned home and was to let him
know when he made up his mind, and the letter of the 22nd
of October, 1904, declining to sell, was the result. It is well
settled that an oral contract for the sale of land will not be
specifically enforced in equity unless such contract is admit-
ted or established by full, clear and convincing evidence.
See *Knight* v. *Knight*, 51 W. Va. 518, (41 S. E. 905;) *Mc-
Cully* v. *McLean*, 48 W. Va. 625, (37 S. E. 559); *Boggs* v.
*Botkin*, 32 W. Va. 566; *Plunkett* v. *Bryant*, 101 Va. 814,
(45 S. E. 742). And in *Gallagher* v. *Gallagher*, 31 W.
Va. 9, (Syl. Pt. 1), it is held: "In a suit by the purchaser
for the specific execution of a parol contract for the sale of
land, the plaintiff must establish the contract alleged in his
bill by a clear preponderance of evidence. If the evidence
is conflicting, and it is not clear that a contract was in fact
made, the court should dismiss the bill." See also *Develope-
ment Co.* v. *Thornburg*, 46 W. Va. 99.

The circuit court, in the light of all the evidence in the
cause, rightly concluded that the plaintiff had failed to estab-
lish such a contract of sale as could by a court of equity be
specifically enforced and the decree is affirmed.

*Affirmed.*