# CHARLESTON.

SUMMERS et al. v. HIVELY.

Submitted March 21, 1916.    Decided March 28, 1916.

1. FRAUDS, STATUTE OF—*Sale of Realty—Enforcement of Contract.*
    Unless the bar of the statute of frauds be removed under the rule of part performance, a written contract for the sale of real estate is not enforcible at the suit of the vendor against a vendee who has not signed the agreement personally or by agent. (p. 54).

2. SAME—*Sale of Realty—"Past Performance"—Payment.*
    Mere payment of the purchase money by the vendee not so signing is not sufficient part performance to render the agreement enforcible against him. (p. 54).

3. SAME—*Action by Vendor—Rights of Purchaser—Recovery of Price Paid.*
    Where the purchaser, not signing the contract of sale, otherwise valid and mutually binding, by reliance on the statute of frauds defeats a suit by the vendor for specific performance, he is not entitled therein, upon an answer claiming such relief, to a recovery of the part of the consideration paid by him, if the vendor is able and willing to comply with the contract on his part by executing and delivering to the vendee a good and sufficient deed for the land upon payment of the balance of the purchase money. (p. 55).

4. VENDOR AND PURCHASER—*Action by Vendor—Merchantable Title—Adverse Possession.*
    A vendor, suing to enforce specific performance by his vendee, must be able to convey a title to the land reasonably free from doubt or defects. But title acquired by adverse possession is sufficient. (p. 56).

Appeal from Circuit Court, Roane County.

Suit by Henry Summers and others against G. L. Hively. From a decree for plaintiffs, defendant appeals.

*Reversed and dismissed.*

*Geo. F. Cunningham,* for appellant.

*Ryan & Boggess,* for appellees.

LYNCH, JUDGE:

From a decree rendered in a suit in equity brought by Henry Summers and wife as vendors against G. L. Hively,

requiring him specifically to perform a contract for the sale
of real estate, the defendant obtained this appeal.

Apart from some contentions which to us seem wholly im-
material upon this inquiry but as to which much of the
testimony was taken, two questions only demand serious con-
sideration.    Of these the first relates to the binding effect
of the written contract of the sale sought to be enforced
against the defendant; the other, the right of the defendant
to have a decree for that part of the agreed consideration
paid by him, should it appear upon this review that for any
valid reason he can not legally be required to comply with his
undertaking.

Plaintiffs signed and acknowledged the contract; defendant
did not sign or acknowledge it.   Nor did he enter on the land
for any purpose, or exercise any dominion over it, or do any
act thereon by virtue of the sale which could in any sense be
construed as an indication of an intent to assume exclusive
control of the land as its owner or proprietor.   Although, by
signing and acknowledging the paper, plaintiffs bound them-
selves to convey the land, if demanded by defendant, upon
payment or tender by him of the unpaid balance of the con-
sideration therefor, the contract was unenforcible against
him so long as he refrained from exercising any proprietary
rights on the land or possessory control over it.   No suit or
action can be maintained on a contract for the sale of real
estate unless the contract, or some memorandum or note
thereof, be in writing and signed by the party to be charged
thereby or by his duly authorized agent.   Ch. 98, Code.

The only allowable deviation from the express mandate of
the statute, although not now important in view of the facts
proved, indeed in view of the averments of plaintiffs' bill
independent of the proof, recognized in this among other
jurisdictions is where the vendee has entered upon the land
sold, though by an oral agreement, and made valuable im-
provements thereon as the ostensible and virtual owner, with
the knowledge and acquiescence of the vendor and holder of
the legal title, and this only upon equitable principles. *Cape-
hart* v. *Hale,* 6 W. Va. 548; *Steenrod* v. *Railroad Co.,* 27
W. Va. 18.   But the partial or entire payment of the consid-

eration is not alone such part performance of the contract
of sale as will entitle the vendor to an enforced compliance
with the terms of the agreement.   *Miller* v. *Lawrence,* 39
W. Va. 160; *Gallagher* v. *Gallagher,* 31 W. Va. 9; *Develop-
ment Co.* v. *Thornburg,* 46 W. Va. 104; *Biern* v. *Ray,* 49
W. Va. 129.

In *Land Co.* v. *Snidow,* 86 S. E. (W. Va.) 915, was in-
volved the reverse of the position presented in this case.   The
plaintiff had not, but defendants had, signed the contract,
and thereby subjected themselves to an enforcible liability
at the option of the vendor.   They could not compel it to
convey, but it could compel them to pay the agreed con-
sideration, upon a tender of a deed for the land sold, notwith-
standing the rule not infrequently recognized in the absence
of similar statutory provisions that for a contract to be
enforcible at all the enforcibility must be reciprocal or
available alike at the suit of either party.

As plaintiffs did aver that defendant signed the contract,
although not then in their possession, and otherwise stated
a good cause for relief if proved, the demurrer was properly
overruled.   The defect did not appear until defendant tend-
ered his answer and with it exhibited a copy of the agree-
ment, whereby he also denied its binding force and effect
on him and other defensive matters to show want of jurisdic-
tion to authorize such a decree as that awarded against him.

But, notwithstanding the averment and proof of the ability,
willingness and desire of plaintiffs to tender and deliver a
good and sufficient deed for the real estate sold, upon pay-
ment by him of the unpaid balance of the consideration
stipulated therefor, defendant claims the right to a decree
in this proceeding, based upon his answer in the nature of
a cross bill, requiring repayment to him of the amount paid
to and received by plaintiffs on the date the sale was made
and the contract signed by them.   To that decree he is not
entitled (*Cook* v. *Griffith,* 86 S. E. 879), unless, as averred,
the title was so defective as to render doubtful its validity as
one readily marketable.   In the case cited, the rule appli-
cable here was discussed with elaboration, and the conclusion
summarized in the syllabus was: ''Where the vendor in an

oral contract for the sale and purchase of land, voidable by the statute of frauds, is able, ready and willing to execute the contract on his part by making, executing and delivering to the vendee a good and sufficient deed for the land, upon payment to him of the balance of purcahse money, or otherwise complying with his contract, the vendee can not in an action at law recover back money paid the vendor on account of the purchase money.''

As to the answer plaintiffs did not reply specifically, defendant insists they are precluded from denying defects in their title as averred therein. But he has directed our attention specifically to the particular link in the chain of title that it is claimed shows an apparent infirmity affecting its marketableness. The deed deemed defective was made November 11, 1865, between the widow and heirs of Hugh Cummings as grantors and the plaintiff Henry and his brother Martin Summers, who April 6, 1867, conveyed his moiety to the plaintiff. One of the Cummings heirs was a minor when the first grant was made. The deed purports to have been made by John Cummings in behalf of himself and as guardian of the infant, without authority conferred by any court proceedings to convey his ward's interest in the land. Other defects in the execution and acknowledgment of the deed are also relied upon.

But, as Henry and Martin Summers jointly held the open and uninterrupted adverse posession of the 92 acres, under color of title, until the date of the deed from Martin to Henry, and Henry thence-forward to the present, a period of nearly half a century, accompanied by the payment of taxes, without knowledge or assertion of any pretended counter claim by the infant or others, it is apparent that the danger of interruption from that source is too remote and improbable to render the title defective or doubtful to an extent warranting the application of a rule different from that recognized in the Cook case. The facts proved in *Spencer* v. *Sandusky,* 46 W. Va. 582, showed more substantial impediments in the way of good title. Unless the status of the title be doubtful, equity will decree specific performance of a valid contract of sale, though the title was acquired by

hostile adverse possession, under color, continued during the prescribed statutory period. *Dunn* v. *Stowers,* 104 Va. 290; Maupin, Marketable Title, sec. 292. Immaterial defects and technical objection will not suffice, where the purchaser substantially may acquire what he contracted for. *Gibson* v. *Brown,* 73 N. E. (Ill.) 578. After the expiration of the limitation period, a good and indefeasible title vests in an occupant under color upon compliance with the requisite character and conditions of possession. *Bennett* v. *Pierce,* 50 W. Va. 604; *Core* v. *Wagner,* 32 W. Va. 277.

Although the defense predicated on the failure of defendant to sign the contract was sufficient to exhonerate him from an enforced compliance with it, his right to a recovery against plaintiffs for the one hundred dollars paid can not be sanctioned on the grounds urged by him. Hence, our order will reverse the decree and dismiss the bill.

*Reversed and dismissed.*