# CHARLESTON.

PHOEBE E. SPONAUGLE *et als. v.* ELLEN WARNER. *et als.*

(No. 5169.)

Submitted March 3, 1925.          Decided March 24, 1925.

1. SYLLABI OF PRIOR CASE APPROVED AND APPLIED.

   Points 2 and 3 of the syllabus of *Farrar v. Goodwin et al.,* decided at this term, approved and applied.   (p. 536).

   (Evidence, 22 C. J. § 193; Specific Performance, 36 Cyc. pp. 656, 683, 684.)

2. SPECIFIC PERFORMANCE—*Specific Performance of Parol Gift of Land by Putative Father for Benefit of Illegitimate Children Will be Enforced.*

   Equity will enforce specific performance of a parol gift of land, where made by a putative father for the benefit of his illegitimate children, and the donees have been put in possession of the land and improved it.   (p. 538).

   (Specific Performance, 36 Cyc. p. 683.)

   (NOTE:—Parenthetical references by Editors. C. J.—Cyc.   Not part of syllabi.)

Appeal from Circuit Court, Pendleton County.

Suit by Phoebe E. Sponaugle and others against Ellen Warner and others. From a decree dismissing plaintiffs' bill and dissolving a temporary injunction, they appeal.

*Reversed and remanded.*

*M. S. Hodges* and *L. J. Forman,* for appellants.
*H. M. Calhoun* and *R. M. Hiner,* for appellees.

WOODS, JUDGE:

Phoebe E. Sponaugle and eleven children instituted this suit in chancery, in the circuit court of Pendleton county, setting up an equitable title to certain lands, and also title by virtue of being put in possession and placing certain improvements thereon, and asking for a restraining order to prohibit defendants from prosecuting a certain suit in un-

lawful entry and detainer. They come here on appeal from a decree of the lower court dismissing their bill and dissolving the temporary injunction.

John W. Warner, during his lifetime, lived with his wife and family on a farm in Bland Hills, Pendleton county. Some twenty years ago he came into possession of a farm on the Hunting Ground, some miles distant. Shortly thereafter he moved Phoebe E. Sponaugle, a woman by whom he had several illegitimate children, and said children, upon the last named farm, and practically gave them the complete use and control over the same. Four other illegitimate children were born to him by this woman after she was moved on the farm in question. Warner repeatedly made declarations to various of the plaintiffs, as well as other parties, that he intended to give the farm to the plaintiffs. Relying on these declarations the plaintiffs worked on the farm, remodeled the house thereon, redeemed much of the land from stones and brush, so that about five-sixths of this sixty-two and one-half acre tract is now in meadow, pasture, or under cultivation. D. A. Landes, a former county surveyor of Pendleton county, testified that, several years before Warner's death, and while stopping at the Hunting Ground farm, he heard a conversation between Warner and one of his illegitimate sons concerning the planting of fruit trees on the Hunting Ground farm in which Warner told said son "to plant more and that the land was theirs"; and then turning to him (Landes) said: "I want you sometime to write them a deed for it." Soon after this, Warner having discovered a mistake in the calls of the deed under which he held, went to Landes and asked him to make the correction and to write a deed for the Hunting Ground farm to Phoebe E. Sponaugle for life, and then in fee to her children. He put his deed to the farm in the hands of the surveyor for this purpose. At that time it was understood that the correction in the calls of the deed could be made from the field notes of the surveyor, who had made a survey of the land theretofore. However, on examination, it was found that the field notes did not contain the necessary information,

and the surveyor in conveying this information later to War-
ner, informed him that it would have to be re-surveyed.
Not having a compass at the time to do the work, his having
been lost in a fire, the matter was delayed, and the work
never completed.  The old deed was still in Landes' possession
at Warner's death in February, 1922.  W. D. Simmons states
that he heard Warner ask Landes at one time if he had made
the deed "for the boys up there", and that Landes replied
that he had not done so for the reason that he had been
unable to get the surveying done.  This same witness states
that in 1919 he proposed selling his farm to Warner and that
Warner replied, in effect: "I will talk to the boys up on
the mountain (plaintiffs), and if they will agree to sell this
(Hunting Ground) farm we will sell it and buy this one
(Simmons' farm)."  And this witness further states that
Warner at different times told him that he intended the
plaintiffs to have the land; and at one time when he asked
Warner to have a telephone installed in the Hunting Ground
farm home, that Warner replied that he would not, and that
"the boys" would have to do that, as it belonged to them
(plaintiffs).

John W. Warner being well advanced in years, and also
subject to "smothering spells," and the plaintiffs desiring
something in writing as evidence that the land was theirs,
Ezra T. Warner, one of them, went to his father, and talked
the matter over, with the result that the following agreement
was signed and delivered to said plaintiff:

> "Article of Agreement between John W. Warner
> and Ezra T. Warner in case of a accident to me.
>
> John W. Warner at Bland Hills this agreement is
> to stand in law I want Phebie E. Sponaugle to have
> the Place Lying about five miles West of Circle-
> ville, W. Va. and county of Pendleton on hunting
> Ground.
>
> Which is now her home Place.  She is to hold this
> land as long as she lives and then it is to go
> to her heirs this day of Oct. 1, 1921.  I set my hand
> and Seal to the above Statement.
>
> J. W. WARNER.  (SEAL.)"
> 98 W. Va.

The validity of this instrument becomes material.   It is admitted that the body of the agreement was written by Ezra T. Warner.   The genuineness of the signature is challenged by the defendants.   Sweeping aside the testimony of the lawful children, as well as the testimony of the illegitimate children, on this point, over which there is question raised as to its admissibility under sec. 23, chapter 130, Code, concerning transactions and communications with deceased persons, let the matter be determined by disinterested witnesses.   Four experienced bank officials, who had many opportunities over a period of ten to twenty years to become familiar with the writing and signature of John W. Warner, pronounced it genuine.   A neighbor of Warner's, who had been postmaster and kept a grocery store for several years near the home of Warner, and had had opportunity to become acquainted with his handwriting, testified to like effect.   William M. Nelson, an acquaintance of long standing, stated that in November, 1921, that Warner made some reference to having disposed of the Hunting Ground farm to the Sponaugle heirs.   This conversation so closely following the execution of the contested paper writing, is a circumstance tending to show that such a paper had in fact been executed.   This evidence as to the signature, read in the light of the oft-repeated declarations of Warner to divers persons, heretofore referred to in this opinion, that he was going to give the Hunting Ground to the plaintiffs, and that he had given it to them, together with the undisputed fact that the said family was put in possession of said farm and allowed to remain thereon for a period of twenty years, is sufficient to establish the authenticity of the paper and signature.   We are not unmindful, however, of the attempt made by the defendants to show that Ezra T. Warner was not at the home of John W. Warner on the date that the paper was executed.   As to this fact there is conflicting testimony.   Taking the testimony offered in support of the fact of his presence at the Warner home, and considering it in connection with that sustaining the execution of the contested paper, we are of opinion that the contention of the defendants is clearly overborne.

Before considering the effect of the written agreement and the questions raised in regard thereto, let us examine some of the controverted facts. The defendants, while admitting the relationship existing between Warner and the mother of his illegitimate children, and that she and her said children were placed in possession of the Hunting Ground farm, deny both that the possession was absolute, or that it was a gift. Declarations of Warner implying ownership in himself, after he had placed the mother and children in possession thereof, are in the record. In *Farrar* v. *Goodwin*, 98 W. Va. 215, 126 S. E. 922, the Court said: "While declarations of a donor after the fact against his own interest or title are ordinarily admissible in evidence against his heirs and devisees, his declarations in his own favor, inconsistent with the previous alleged gift, are incompetent as self-serving, and therefore should be excluded." *Depue* v. *Steber*, 89 W. Va. 78; *Jefferson* v. *Simpson*, 83 W. Va. 274; *Crothers* v. *Crothers*, 40 W. Va. 169; *Albright* v. *Albright*, 153 Iowa 397. They claim that the improvements made on the farm by the plaintiffs were of negligible value. In the case of *Poullain* v. *Poullain*, 76 Ga. 420, it is said that improvements made by the donee under an alleged parol gift of lands, although of slight value, are sufficient to pass title if they are substantial and permanent, beneficial to the freehold, and are made in reliance of the alleged gift, and are such as none but the owner would, under like circumstances, make upon the property. The same rule is announced in *Moore* v. *Moore*, 87 W. Va. 9.

Returning to the written agreement, the defendants contend that it is either an agreement, as its name implies, or a will. If an agreement, that it is uncertain in its terms and provisions. As to the latter the case of *White* v. *Core*, 20 W. Va. 272, is in point. There it was held that in agreements for the sale of lands the court may go outside of the writing for the purpose of identifying and ascertaining the lands sold, where general words of description capable of being made certain are used in the writing. And a contract to sell "my farm" or "the mill" is sufficiently certain if it appears that the vendor has but one such building or tract of

land. The agreement here under consideration describes the property as, "the place lying about five miles West of Circleville, W. Va. and county of Pendleton on Hunting Ground, which is now her (Phoebe E. Sponaugle's) home place." This seems sufficient under the rule. Again lack of mutuality is urged. This is, of course, on the assumption that it is a writing taking a sale of realty out of the statute of frauds. As to this, in *Ruckman* v. *Hay*, 92 W. Va. 101, Judge LIVELY says: "Our statute requires and provides that no action shall be brought upon any contract for the sale of real estate unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent; and our interpretation thereof is that it does not require both of the parties to have signed the note, memorandum or contract; only the one who is to be charged thereby, where the other party by his bill offers to perform his part. *Donahue* v. *Rafferty*, 82 W. Va. 534; *Mountain Park Land Co.* v. *Snidow*, 77 W. Va. 54; *Creigh's Admr.* v. *Boggs*, 19 W. Va. 240; *Capehart, Ex'r,* v. *Hale,* 6 W. Va. 547." In *Central Land Company* v. *Johnson*, 95 Va. 223, the court held that specific performance of a unilateral contract will be enforced against the party signing it, the other requisites for a specific performance existing, although the other party did not sign and there was no mutuality of the remedies between them at the time agreement was made; the filing of the bill by the other party for specific performance making the remedy and the obligation mutual.

Another objection to the instrument is that it was only to take effect upon the happening of a contingency, which did not in fact arise or happen; that it is predicated upon the phrase, "in case of accident to me." That Warner died a natural death in his home is admitted. The paper, as we view it, does not admit of such construction. Taking into consideration its execution, in relation to all the facts and circumstances in this case, we are of opinion that it cannot be said to have been valid only on the happening of an accident to the maker, but that it was executed in view of such a contingency, that there might be in existence left some written

evidence of the gift orally made. That it is not a testamentary paper, as claimed, seems equally clear. It does not matter what the paper is called. It undoubtedly is a written memorandum intended to be evidence of the gift theretofore made by Warner of his Hunting Ground farm to his illegitimate children and their mother, in event of an accident to the donor, before he had conveyed to them the premises by deed.

Thus considered, this writing likewise contains all the essential requirements of an agreement taking the sale of real estate without the statute of frauds. Viewed either as written evidence of an oral gift theretofore made, or as a memorandum in writing taking the sale of realty out of the statute of frauds, what remains to be shown to entitle the plaintiffs to the relief sought in this cause? If an oral gift, the rule in *Berry* v. *Berry,* 83 W. Va. 763, applies. There the court holds: "That a court of equity will decree specific performance of a parol gift of land, when it is supported by a meritorious consideration and the donee has entered into possession of the property, and expended money in the improvement thereof, on the faith of the gift, is well and firmly settled." To the same effect: *Frame* v. *Frame,* 32 W. Va. 463; *Harrison* v. *Harrison,* 36 W. Va. 556; *Crim* v. *England,* 46 W. Va. 480; *Pigg* v. *Corder,* 12 Leigh. 69; *Reed's Heirs* v. *Vannorsdale,* 2 Leigh. 569; *Darlington* v. *McCoole,* 1 Leigh. 36; *Shobe's Ex'rs* v. *Carr,* 3 Munf. 10. As a memorandum in writing taking the sale of realty out of the statute of frauds, if supported by a meritorious consideration, it may be specifically enforced, without additional acts of the grantor, such as putting the grantee in possession. In either instance a meritorious consideration is essential. Does the evidence show such a consideration? A deed made by a father for the benefit of his illegitimate child is upon a good consideration. *Conley* v. *Nailor,* 118 U. S. 127; *Gay* v. *Parpart,* 106 U. S. 679; *Bunn* v. *Winthrop,* 1 Johns Ch. 329; *Barnett* v. *Greathouse,* 77 W. Va. 514. In *Hook* v. *Pratt,* 78 N. Y. 376, the court held: "There is nothing illegal in an undertaking by a putative father to support his illegitimate child, or to pay a sum of money in consideration of such support

being furnished by another, though it be the mother of the child." Authorities are uniform to the effect that a contract made in consideration of future cohabitation is absolutely void. On the other hand, it is equally as well settled that a contract of conveyance, even in consideration of past cohabitation, intended or regarded as reparation or indemnity for the wrong done, is treated at common law as founded upon a good consideration. Story on Cont. 541; Chitty on Cont. 661. In *Turner* v. *Vaughan,* 2 Wilson 339, where this consideration was expressed in the condition of the bond, the court said: "The Judges all agree that it was a good and meritorious consideration. **** The turpitude is in the act, and not in the compensation."

We know of no decisions, nor are we aware of any principle of the common law which holds it immoral or wrong for the putative father to make provision for his illegitimate child. In fact the statute of our state compels him to do so, if that aid is invoked by the mother of the child. The record in this case shows such relation by Warner to the mother and the children, who are plaintiffs in this suit, as would warrant the recognition of a moral obligation on his part to make some provision for their maintenance and support. He placed the mother and children in the possession of the Hunting Ground farm, made repeated declarations to the plaintiffs, as well as to others, of his intention to give them the farm, and that it was theirs, and finally as evidence of such gift executed the paper writing. There is absence of proof that the plaintiffs used importunity or persuasion to induce Warner to make this gift to them. In fact, there is no evidence, aside from that of Ezra T. Warner, that any of them even requested him to make such a gift. On the other hand, the proof is abundant that the making of a provision for these illegitimate children had long been his purpose. It is not necessary to protract this opinion by pointing out the endless variety of cases where every principle of honor, law and morality require such provision to be made for an unfortunate woman and more unfortunate offspring. Surely, when he does voluntarily what every person would

say he was bound by every principle or morality and religion to do, the law will give his act its sanction.

The decree of the circuit court is reversed, the plaintiffs decreed to be the lawful owners of the land in controversy, Phoebe E. Sponaugle to take a life interest therein, the remainder in fee to her children, subject to the dower of the lawful wife of John W. Warner. This cause is remanded with directions that all proper orders may be entered in accordance with this ruling.

*Reversed and remanded.*