MARTIN T. ICE *et al.* v. GEORGE W. ICE *et al.*

(No. 8574)

Submitted October 19, 1937. Decided November 16, 1937.

*Wm. T. George,* for appellant.
*Ware & Ware,* for appellees.

Fox, Judge:

The appellant, Wilmina Grace Reville, complains of a decree of the Circuit Court of Barbour County setting aside a deed executed by George W. Ice, dated the 30th day of July, 1934, conveying to her a tract of about 31 acres of land situated in said county; and also complains of the provisions of said decree specifically enforcing an alleged verbal contract of sale of said land to Martin T. Ice and Okey Ice, and requiring the conveyance of said land to Okey Ice. She also complains of the provision of the decree directing that the payment of $300.00 required of the plaintiffs be made to George W. Ice instead of the appellant.

On the 2nd day of August, 1923, Martin T. Ice conveyed to George W. Ice a tract of 31 acres and 140 poles of land in consideration of the sum of $2600.00. The deed itself states the consideration to be $2,000.00 and acknowledges receipt thereof, but the testimony shows that the real consideration was $2600.00, and that $316.91 thereof was not in fact paid, for which sum George W. Ice executed to Martin T. Ice his note dated August 2, 1923, payable "thirty days after demand after date," or "thirty days after date" depending on which of the two copies of the note in the record is accurate. It appears that George W. Ice never at any time took possession of this tract of land, and that Martin T. Ice and Okey Ice retained possession thereof for the greater part of the period between the date of said deed and the alleged contract of sale hereafter referred to. There is conflict of testimony on this point, Martin T. Ice and Okey Ice testifying that for about four years of this period they did not have possession of said land; and it is uncertain whether or not they had actual possession thereof at the date of the alleged verbal contract of sale. However this may be, it is quite clear from the record that the plaintiffs, for a number of years, had possession of this land under some arrangement by which they were to account to George W. Ice for the proceeds of crops, and under which they were to pay the taxes accruing from year to year. The taxes for 1929 and thereafter were not paid and the land

was sold at a sheriff's sale in December, 1931, and purchased by Okey Ice. Following this sale, in the spring of 1932, the plaintiffs aver that they entered into a verbal contract with George W. Ice by which they purchased said land on the following terms: They were to pay the taxes for the several years for which the land was delinquent; the note of $316.91 was to be cancelled; and, in addition, George W. Ice was to be paid the sum of $300.00, either in cash or in monthly installments, and the land was to be conveyed either to Martin T. Ice and Okey Ice, jointly, or to Okey Ice. How and by whom this conveyance was to be made is not entirely clear, but the evidence justifies the conclusion that the conveyance was to be made under the tax purchase. Inasmuch as there is uncertainty as to just what this contract was, an analysis of the testimony seeking to establish the same seems necessary.

Martin T. Ice testified that George W. Ice came to his place, and said that he wanted to sell the land to him or to Okey; that he told George that Okey could do as he pleased, and that if they bought it, he would let Okey take the note as payment on it; that George said that "he could get the deed from the courthouse", which, being explained, was that Okey Ice could get the deed from the courthouse, presumably under his tax purchase. The testimony is not clear, but the inference is that the $316.91 note was to be cancelled, and $300.00 additional was to be paid to George W. Ice. Martin T. Ice then said that the agreement was that the deed would be executed when the note was paid, referring to the $300.00 which he said was to be represented by a note, or could be paid in monthly payments. He also stated that the note was to be signed by himself and Okey Ice, and that the land was to be conveyed to him and Okey together.

Okey Ice, when asked whether George W. Ice was to make a deed to him for the tract of land in controversy, testified "Yes, he was to make the deed. We proposed that we just let the court make the deed at the tax sale." He also testified that the deed was supposed to be made to him, and that the verbal contract of sale was made in March or April, 1932. On cross-examination, when asked

if George W. Ice would have permitted him to get a deed from the court under the tax sale, he stated: "Well, he never agreed to make the deed." Ray Ice, a witness for the plaintiffs, testified that after George W. Ice conveyed this property to Wilmina Grace Reville, he stated to the witness that "he had sold it to Mart and that he had contracted to rent it to Uncle Mart for so much a month, and he said that he had not made a deed, and that Mart had not paid him." Sam Phillips testified that he had a conversation with George W. Ice right after Christmas, 1931, in which George said that he had sold the land to Martin T. Ice, but this is in conflict with the evidence that the contract of sale was not made until the spring of 1932. Everett Ice testified for the plaintiffs, but his testimony is based on conclusions and what he understood, and therefore incompetent. George W. Ice denies the sale of this land to the plaintiffs, or to either of them; denies that he was indebted to Martin T. Ice on account of the note of $316.91; contends that this note was paid through his share of the crops produced on said tract of land while it was in possession of the plaintiffs; and by such denials raises the issue of whether or not there ever was a contract of sale. To further support the plaintiff's case, testimony was introduced as to improvements made on the land. The record clearly shows that the plaintiffs did enter upon the land and cut some filth, and build some fences. There is conflict in the testimony as to the character and nature of these improvements.

The evidence does not satisfactorily support the contention that an enforceable contract of sale was ever entered into by the parties. In the first place, the nature and terms of the contract alleged are uncertain; and taking the testimony of the plaintiffs alone, it is difficult to determine what, if any, contract was entered into. The testimony of witnesses other than the plaintiffs' with respect to the contract is vague, indefinite and unsatisfactory. The testimony of the witness who refers to a conversation touching this contract alleged to have been held months before any contract is claimed to have been entered into, is entitled to little, if any, weight. The testimony as to the improvements is likewise unsatisfactory.

It may be questioned whether the improvements made were of a permanent nature, or only such as might have been placed thereon by a tenant desiring to use the property. In addition to these weaknesses in the plaintiffs' case, the record shows that after George W. Ice conveyed this land to his daughter, Wilmina Grace Reville, both Martin T. Ice and Okey Ice called upon George W.. Ice to pay the note of $316.91 and went so far as to place the note in the hands of attorneys for collection. One of these attorneys, on August 15, 1934, wrote George W. Ice advising him that he had been retained to institute a suit based on the claim that he had transferred "a certain tract of land" to his daughter, and that such transfer was made for the purpose of defrauding Martin T. Ice, and preventing the collection of this note. There is testimony that in September, 1934, Martin T. Ice made a demand upon George W. Ice for the payment of said note, and threatened to sue him to enforce its collection. Martin T. Ice admits that he placed this note in the hands of attorneys, and testified "I wanted him to pay the note and if the note wasn't paid I wanted a suit brought," stating at the same time that "He (George W. Ice) had gone back on his contract with me," and that he told his attorney "that unless he paid the note a suit would be brought to set aside the deed, that is what I done." Okey Ice testified that "I went to George myself and asked him to pay the note. * * * I asked him to let us have the land or the money on the note. * * * I told him to pay the note or we would bring suit against the land. * * * I instructed Vicquesney to notify George that unless he paid the note we would bring suit against the land."

The law governing the specific execution of a verbal contract for the sale of land is very clearly set out in the case of *Gallagher* v. *Gallagher, 31 W. Va. 9, 5 S. E. 297,* and in that case it is stated that "The plaintiff must establish the contract alleged in his bill by a clear preponderance of evidence. If the evidence is conflicting, and it is not clear that a contract in fact was made, the court should dismiss the bill." On this point, see also *Boggs* v. *Bodkin, 32 W. Va. 566, 9 S. E. 891, 5 L. R. A. 245; Miller* v *Lorentz, 39 W. Va. 160, 19 S. E. 391; Knight* v.

*Knight,* 51 W. Va. 518, 41 S. E. 905; *Bell* v. *Whitesell,* 64 W. Va. 1, 60 S. E. 879; *Pickens* v. *Stout,* 67 W. Va. 422, 68 S. E. 354; *Gibson* v. *Stalnaker,* 87 W. Va. 710, 106 S. E. 243. There has been no deviation from the rule that evidence to sustain such a contract must be full, clear and convincing. It is also well settled that payment of purchase money alone is not sufficient to support such a contract in the absence of other equities. *Gallagher* v. *Gallagher, supra; Miller* v. *Lorentz, supra; Huntington Development Company* v. *Thornburg,* 46 W. Va. 99, 104, 33 S. E. 108; *Biern* v. *Ray,* 49 W. Va. 129, 38 S. E. 530; *Summers* v. *Hively,* 78 W. Va. 53, 88 S. E. 608. The character of possession and improvements necessary to the enforcement of such a contract is discussed in *Smith* v. *Peterson,* 71 W. Va. 364, 76 S. E. 804; *Gibson* v. *Stalnaker, supra; Farrar* v. *Goodwin,* 98 W. Va. 215, 126 S. E. 922; *Sponaugle* v. *Warner,* 98 W. Va. 532, 127 S. E. 403. In the case of *Gallagher* v. *Gallagher, supra,* it was held:

> "To entitle a purchaser to relief in such case it must appear, *first,* that the contract is certain and definite in its terms; *second,* that the facts proved in part performance refer to, result from or were made in the pursuance of the contract proved; and, *third,* that the contract has been so far executed that a refusal to complete it would operate as a fraud upon the purchaser, and place him in a situation in which he could not be adequately compensated in damages."

This follows the ruling in *Wright* v. *Pucket,* 22 Gratt. (63 Va.) 370, and has been supported by numerous cases decided by this court, many of which are cited above, and furnishes a clear statement of the law governing this subject.

Tested by these authorities, we do not think the plaintiffs' case has been established, so far as it relates to the specific execution of the alleged verbal agreement set up in the bill. There are too many doubts and uncertainties concerning the several elements required to establish an enforceable contract to warrant us in enforcing the alleged contract asserted herein.

Plaintiffs, in their bill, ask for alternative relief. They ask that, in the event the verbal contract cannot be specifically enforced, the deed made by George W. Ice to his daughter be set aside as fraudulent and as made to hinder and delay them in collection of their claims, which include money paid for taxes, money and labor for improvements, and the note of $316.91 above referred to. The court having decreed the specific execution of the contract, did not, of course, pass upon this branch of the case. The plaintiffs have the right to have their claims for money recovery passed upon by the court below.

The cause is therefore reversed and remanded, with leave for the plaintiffs to pursue their claims based upon the alleged fraudulent transfer of the real estate in question.

*Reversed and remanded.*