Staples, J.,
delivered the opinion of the court.
This is a suit for the specific execution of a contract. The bill alleges that one of the appellees about the 3d of September, 1873, contracted in writing with the appellant for the sale of a tract of land in Spotsylvania county, and that the appellant agreed in writing to purchase said tract at the price of twelve dollars per acre, one-third to be paid in cash, the remainder in one and two years.
The appellant, in his answer to the bill, denies that he made any such contract, or that he ever had any intention of purchasing the land; and he denies that he ever made any proposition, orally or in writing, to the appellees, or ■ either of them, looking to said purchase.
This is the sole issue presented by the pleadings, and the only question we have to determine is, whether the allegations of the bill are sustained by the proofs.
The main witness relied upon by the appellees is John H. Walze, the alleged agent of the appellant. This witness states that in September, 1873, he was authorized by the appellant to make.the purchase upon the terms set out in the bill; that thereupon he wrote to one of the appellees, Simon Mahoney, informing him of the fact, and distinctly stating in his letter the terms of the proposed purchase ; and shortly thereafter he received a reply from the same appellee accepting the proposition and agreeing to the sale upon the terms proposed.
The witness further says, that he immediately wrote to the appellant, informing him of the purchase made on his *647 behalf, and the terms, and this letter, together with the one received from the appellee, he delivered to William Wyeth, appellant’s brother, and requested him to them to appellant; and that William Wyeth, in the presence of witness, mailed them accordingly to appellant’s proper address.
Witness also slates that not very long afterwards he received a letter from appellant, in which he says, “ I am pleased with your new purchase at twelve dollars, and have again to thank you sincerely for your kindness and attention to my interests.”
This letter bears date 30th of October, 1873, and is a part of the record.
If the statements made by the witness are true, it must be conceded that the contract is fully established; for it is now well settled that the memorandum required by the statute of frauds may consist wholly of the letters of the parties interested, whether they be written to the person with whom the contract is made, or to some third person. All that is necessary is that the writing, whatever it may be, shall contain the essential terms of the agreement, and shall show that the proposals on one side have been accepted by the other, without a resort to parol testimony. In order to form a contract by letter, Lord Eldon has said, “Nothing more is necessary than this, that when one man makes an offer to another to sell for so much and the other closes with his offer, there must be a fair understanding on the part of each as to what is to be the purchase money, and how it is to be paid, as also a reasonable description of the subject of the bargain.” Stratford v. Bosworth, 2 Ves. & B. 341, 346; 2 Lomax Digest, p. 37, side; Pomeroy on Contracts, § 81, 84.
It is well settled that under the statute of frauds it is not necessary that the writing shall be signed by either of the parties. It is sufficient that it is signed by the agent of the party to be charged. Nor is it necessary that the *648 au^10lafcy °f agent shall be in writing. It may be conferred by parol. The statute does not make it indisthat the agent shall sign the name of his principa]—the signing his own name is sufficient. 2 Lomax Dig. 45; Pomeroy, §78, 79.
Xn the case before us, we have all those requirements of the statute complied with—authority given to the agent to buy, the terms agreed upon by the agent and the vendor— contained in the letters of the agent and of the vendor ; and we have also the written acceptance of the contract by the appellant. We have all these—if the evidence of the agent Walze is to be relied upon.
The appellant, or his counsel, fully appreciating thik fact, have adduced testimony assailing the character of the witness as a man of veracity. Without stopping now to enquire how far he has been successful in the effort, let us see whether the witness is sufficiently corroborated by other facts and circumstances as to warrant the court in believing his evidence.
At the time the deposition was taken, the appellant and his counsel were present cross-examining the witness.
When the witness spoke of the two letters, the one written by Simon Mahoney and the other by himself, which were mailed to appellant by his brother, appellant was then and there called upon to produce these letters. He made no response whatever. He neither denied nor affirmed that he had ever received them. If he did not receive them, why did he not say so ? Could anything be more natural, or proper, or reasonable, than that he should at once say he had never received any such letters, and he knew nothing about them?
The conclusion is irrisistible that appellant was but too conscious that the witness was telling the truth. He was not then prepared to deny having received the letters, he was not willing to produce them, and he took refuge in silence.
*649 It is to be born’e in mind, further, that Walze states that he delivered the two letters to appellant s brother, William Wyeth, and the latter, in witness’ presence, them to appellant. If this statement was false, nothing was easier than for appellant to bring his brother forward, and show the fact. The statement was susceptible ready contradiction if it was untrue, and the appellant failed to avail himself of the means of making that contradiction. It is hardly to be supposed this court would, under such circumstances, reject the testimony as unworthy of credit. And it is observable throughout that whilst the appellant had the right to testify and give his version of the transaction, he has not thought proper to do so. It is impossible to avoid a suspicion, at least, that the appellant was, perhaps, not willing to encounter the test a public cross-examination with respect to these letters and the purchase made for his benefit.
After all the evidence was concluded, and not till then, he filed his answer. In it he makes no allusion whatever to the letters alleged to have been sent him through his brother. He contents himself with a general denial that he had ever received any communication from either of the complainants for the sale of the land; which may be literally true, and yet he may nevertheless have received the appellant’s letter directed to Walze. That letter was not a proposition of sale, but was an acceptance of a proposition of sale made by Walze, professing to act as appellant’s agent.
As has been stated, there is in the record a letter written by appellant, dated October 3d, 1873, in which he says he is pleased with the new purchase at twelve dollars. The appellant, upon a trial in the superior court of the city of Baltimore, testified that this letter related to the purchase of the Libby farm, and not to the purchase of the Mahoney property. It was, however, then demonstrated that this statement was not correct, as the price of *650 the Libby farm exceeded twelve dollars per acre. In ... r his answer, however, the appellant states he does not to what he referred as the new purchase made Py Walze. He thinks it was to some articles of personal property purchased by Walze, to be used on his farm, known as Chancellorsville.
This statement is somewhat improbable, to say the least, as the appellant would scarcely have taken the trouble to write a letter merely for the purpose of expressing his pleasure at the purchase involving the small sum of twelve dollars. Walze, on the contrary, swears that the reference was to the purchase of the Mahoney farm at twelve dollars per acre. The whole difficulty would have been removed by producing Walze’s letter, to which appellant’s was a reply. What has become of that letter? The appellant does not say that it was lost or destroyed ; he makes no excuse or explanation of his failure to produce it. If a party having important documents in his possession, which would show the truth of his statements, suppresses it or fails to produce it, what other inference can be drawn than that it would operate to his prejudice? 1 Greenl. Ev. § 37.
From all these circumstances, it is apparent that the testimony of Walze derives the strongest confirmation from the conduct of the appellant himself. It is also confirmed by the uncontradicted testimony of Simon Mahoney, one of the appellees. This witness states that the appellant visited the land between the 23d October and the 4th of November, 1873, and expressed his entire satisfaction at the purchase, and that he declared he expected to have the purchase money in a month or two, and that he would pay the interest promptly. Here, again, the appellant was called upon to contradict the statement of the witness; but he never did so. Conceding that this appellee is mistaken in supposing he signed a written contract for the sale of the land other than the letter, he is not mistaken in the *651 assertion that the appellant, after seeing the land, expressed his entire satisfaction with the purchase made by his agent.
The learned counsel for the appellant insists, that conceding the contract to be proved by the evidence, it is not such a contract as a court of equity will enforce; cause it is apparent, that whilst Walze was professing to act as the agent of the appellant in making the purchase, he was, at the same time, the agent of the appellees in making the sale of the land; all of which was well understood by the appellees.
There.is not a doubt that Walze did occupy the position of agent for both parties in the transaction. And if this were all it would be impossible to enforce the contract. But it appears, that after the purchase was concluded and all its terms made known to the appellant, and after he was informed of the arrangement between appellees and Walze, the appellant said he was pleased with the purchase, the action of the agent was right, and he made some arrangement with respect to the payment of the interest. Simon Mahoney, to whom reference has been made, says he told appellant, that he, the appellee, was to give Walze all over ten dollars per acre he could get for the land.
The appellant insisted that it was too much to give him; and proposed to appellee, that the latter should receive payment directly from appellant, and thus save the commission to Walze, which could be divided between appellant and appellee.
If this testimony be reliable—and it has not been contradicted—it puts an end to every allegation of fraud founded upon the idea that Walze was acting as agent for the appellees.
It has been further insisted that while Simon, John and Patrick Mahoney were jointly interested in the land, the sale was made by Simon Mahoney alone, without authority from the other two, and inasmuch as the appellant was in *652 n0 con<^ion to enforce the contract against them, they, of course, cannot maintain a suit for specific performance him. There can be no doubt, however, that Simon Mahoney was fully authorized by his co-tenants to make the sale. The fact is proved by Simon Mahoney himself, who says that they wrote to him, authorizing him to sell the land on the best terms that could be obtained. These letters-are not produced, having been mislaid or lost as the witness states, but there is no reason to doubt that they were written, and that they conferred full authority to make-file sale. That authority, as has been seen, might have been conferred by parol. The appellees may maintain a suit for specific execution, although neither of them have signed a written contract of sale. As a general rule, the mutuality of the obligation must be judged of by reference to the time the agreement was entered into. There are,, however, certain well known exceptions to this rule. One of them is found in the case of a party, who not having signed may yet, upon filing a bill, enforce the agreement against one who has signed. The reason most generally given for this exception is, that the plaintiff by filing the bill waives the original want of mutuality, and renders the remedy mutual. Fry on Specific Performance, §§ 296-7.
Whatever may be said with respect to the justice of this exception to the general rule, requiring mutuality of remedy, it is now too well established to be called in question at the present day. See Lomax Digest, side page 56; 5 Wait’s Digest, 788; Pomeroy on Contracts, § 170.
Here the appellees, having filed their bill, have submitted to the jurisdiction of the .court, and waive the want-of mutuality, if there was any such, and thus removed any difficulty in the way of specific execution.
We are of opinion, however, that all the appellees were originally bound, and that the appellant could have main *653 tained the suit against them, as it was originally entered into between the parties. For these reasons, we think there is no error in the decree of the circuit court, and that «ame should be affirmed.
Decree affirmed.