## CHARLESTON.

A. M. RUCKMAN v. HARRY O. HAY *et als.*

Submitted October 17, 1922. Decided October 24, 1922.

1.  SPECIFIC PERFORMANCE—*Vendor who Offers to Perform Definite Contract Entitled to Specific Performance Though Not Bound Under the Statute of Frauds.*

    Where a contract for sale and purchase of land is definite as to parties, subject matter, consideration and terms, and a note or memorandum thereof in writing is signed by the purchaser, it may be specifically enforced though the seller is not bound under the statute of frauds to convey, when, by his bill, he offers to perform his part, and tenders his deed in discharge thereof. (p. 100).

2.  SAME—*Purchaser Cannot Withdraw From Contract Until Vendor Has Had a Reasonable Time to Deliver Deed Where Time Not Essence of the Contract.*

    In such case, where the time of execution and delivery of the deed, is not of the essence of the contract, the purchaser cannot discharge himself from his obligations by notifying the seller before he has had reasonable time and opportunity to execute and deliver the deed, that he will withdraw from the contract and refuse the deed. The fact that the seller is not bound to convey by reason of the statute of frauds, will not release the purchaser. (p. 103).

Appeal from Circuit Court, Randolph County.

Suit by A. M. Ruckman against Harry O. Hay and others. Decree of dismissal, and plaintiff appeals.

*Reversed and entered.*

*Arnold & O'Connor,* for appellant.
*W. B. & E. L. Maxwell,* for appellees.

LIVELY, JUDGE:

This suit is for specific performance of a contract com-

promising an action at law, entered into by counsel representing the parties. The decree of October 12, 1921, appealed from, sustained the demurrer to the bill and dismissed it for want of equity.

Plaintiff, Ruckman, owned lots 22 and 23 of block 4 in the Round Barn Addition to the city of Elkins, and in 1907 conveyed them, with general warranty, to Morgan for $850.00 cash. At that time a prior vendor's lien existed against the property of which Ruckman claims to have had no knowledge. Afterwards, Morgan, who is now dead, leaving no estate, conveyed these lots with general warranty, to defendant, Hay, for $1,000.00. As the result of a suit to enforce the vendor's lien against these lots they were sold and confirmed to Elliott. Hay was made a party to that suit, but being a non-resident of the state was proceeded against by publication and had no actual notice of the sale until after the deed was made, when he then instituted a suit in covenant against Ruckman under the general warranty in the deed to Morgan. This action of covenant was matured and set for trial on the 16th of June, 1919. About the first of June, Tallman, counsel for defendant, and Maxwell, counsel for plaintiff, entered into negotiations for a settlement of the action of covenant. It appears that each had full authority to adjust all matters arising out of the litigation. It appears that Tallman proposed to obtain title to the lots from Elliott, the purchaser at the judicial sale, and re-convey them to Hay in satisfaction of his claim under the action of covenant, and thus put him in *statu quo.* Maxwell agreed to this, with the understanding that no expense should be incurred until he could communicate with his client and receive confirmation of the agreement. About the 4th of June Tallman went to Belington, where Elliott resided, and purchased the lots from him for his client for $400.00; then returned to his office at Elkins, prepared a deed therefor and took it back to Elliott on the 11th of June, when it was acknowledged and delivered and the $400.00 paid. Upon returning to Elkins, he immediately informed Maxwell that he had procured a deed for the lots and was ready to convey them in accordance

with their agreement. On the 14th of June Maxwell telegraphed Hay, who lived in Illinois, to the effect that Ruckman had re-purchased the lots, and offered them in satisfaction of his demand. On the 18th, which was Saturday, Hay wired Maxwell to accept the proposition, but required payment of costs of the action in covenant. Maxwell informed Tallman of the acceptance with the condition to pay the costs, to which Tallman agreed, Tallman stating that the deed would be executed and delivered as soon as Ruckman came to town. Ruckman lived about 40 miles from Elkins, and was a cripple. After some subsequent correspondence between Hay and his counsel it seems that Hay became dissatisfied with the agreement to take back the title to the lots, and on June 25th wrote to his counsel: "I sure don't want possession of the lots if there is any possible chance of getting a judgment against Ruckman, and if you can offer Ruckman's failure to execute the deed as an excuse to refuse to accept them now, and you think this advisable you can let the case stand as it is and try it next term of court." The term of court adjourned about the 25th of June. The action of covenant had been continued, counsel stating in open court that the case would be settled. On the 27th of June, Maxwell wrote a letter to Tallman advising him that Hay had withdrawn his offer to accept a conveyance of the land and dismiss his suit, and advising him that the law case would remain on the docket for trial at the next term of court. On October 6, 1919, Ruckman executed a general warranty deed to Hay for the two lots, but it does not appear that this deed was then tendered; indeed, in view of the written statement that the proposition of settlement had been withdrawn and that a deed would not be accepted, it was not necessary for him to make tender. Hay avers in his answer that he was informed that the letter from his counsel to Tallman stated that a deed would not be accepted if tendered.

In March, 1921, plaintiff presented his bill, exhibiting therewith the deed from Elliott to him, dated June 11, 1919, and his deed of October 6, 1919, which conveys these two lots, and set up the facts concerning the agreement herein-

before set out, asked for and obtained an injunction against
further proceedings in the suit at law, the court requiring
as a condition precedent to the issuing of the injunction that
he confess judgment for $850.00 in the action of covenant,
which he did; and prayed for specific performance of the
agreement, and for general relief. Hay demurred to the
bill, answered it, the depositions of Tallman and Maxwell
were taken, and the case submitted on all the pleadings and
evidence, with the result hereinbefore set out. There is no
substantial disagreement of facts.

Has equity jurisdiction to specifically enforce a contract
of compromise of this character? This is the issue raised.
It is conceded by defendant that the acceptance of Hay, by
his telegram of June 14th, which he afterwards confirmed
by letter, was an offer on his part in writing and would have
become binding upon him when Ruckman accepted the same;
and that the execution of the deed by Ruckman on the 6th
of October was such an acceptance on his part as bound him;
but before that time Hay, through his counsel, on the 27th
of June, 1919, withdrew his acceptance. The claim is that
the contract, so far as Ruckman was concerned, was op-
tional with him until he executed the deed of October 6th,
that up to that time the contract was not binding upon him
under the statute of frauds, he not having signed any mem-
orandum or note in writing which would bind him to perform
his part of the contract, prior to the date of his deed of Oc-
tober 6th; and thus the contract being optional on the part
of Ruckman was likewise optional on the part of Hay, and
Hay having exercised his option to withdraw from the con-
tract, it cannot now be specifically enforced against him.

There is some confusion and conflict in the decisions as to
the application of the statute of frauds in contracts of this
character, possibly arising from the wording of the statute
in each particular jurisdiction. A large class of cases holds
that a contract which the statute of frauds declares shall
not be valid unless in writing and signed by the party to be
charged therewith, need only be signed by the party against
whom the suit is instituted, and that it is no objection to

maintaining such suit and recovering upon such contract, that defendant did not sign and was not bound by its terms, he having instituted the suit, thereby binding himself to perform. 2 Kent Comm. 510; *Smith's Appeal*, 69 Pa. St. 480; *Old Colony Railroad* v. *Evans*, 6 Gray 31; *Williams* v. *Robinson*, 73 Me. 186; *Perkins* v. *Hadsell*, 50 Ill. 217. There is another line of cases which holds that unless the party bringing the action is bound by the contract, then neither is bound, because of want of mutuality. *Krohn* v. *Bantz*, 68 Ind. 277; *Stiles* v. *McClellan*, 6 Col. 89; *McDonald* v. *Bewit*, 51 Mich. 79; *City of Murray* v. *Crawford*, 28 L. R. A (N. S.) 680. Our statute requires and provides that no action shall be brought upon any contract for the sale of real estate unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent; and our interpretation thereof is that it does not require both of the parties to have signed the note, memorandum or contract; only the one who is to be charged thereby, where the other party by his bill offers to perform his part. *Donahue* v. *Rafferty*, 82 W. Va. 534; *Mountain Park Land Co.* v. *Snidow*, 77 W. Va. 54; *Creigh's Admr.* v. *Boggs*, 19 W. Va. 240; *Capehart's Exr.* v. *Hale*, 6 W. Va. 547. It is clear under our decisions that Hay would be liable under his contract, although there was no note or memorandum in writing which would bind the plaintiff at the time the contract was made. His telegram to his attorney, which was exhibited to the attorney for plaintiff, and his letters filed with the depositions, are sufficient memoranda in writing to preclude him from successfully pleading the statute. *Wyeth* v. *Mahoney*, 32 Gratt. 645. It will be observed that when Hay's telegram was received, it was exhibited, or its contents were communicated to, plaintiff's counsel, who thereupon agreed to the condition requiring him to pay the costs of the action in covenant. The contract was then formed, and all that remained was execution and delivery of the deed and the dismissal of the law case. The deed was to be executed and delivered by Ruckman when

he came to town, and it does not appear that any particular time was stated in which this was to be done. The minds of the parties had met and the contract was mutual and binding on each. But it is insisted that because at the time when the minds of the parties met and all that was necessary to be done was to carry it out by the execution of the deed and dismissal of the law suit, the plaintiff was not bound to carry out the contract, by reason of the statute of frauds, not having signed any note or memorandum in writing by which he could be compelled to make the deed; and, therefore, at any time before he actually executed the deed or attempted to do so, defendant could withdraw from the contract. And acting upon that theory, defendant gave notice of withdrawal on the 27th of June, giving as a reason therefor that Ruckman had not promptly come to Elkins and executed his deed before the term of court expired. We do not understand that this prompt action was required. On the contrary, it appears that no particular time was set or agreed upon in which the deed was to be executed. If the proposition contended for be true, then a party who had signed a contract or had given some note or memorandum thereof which would bind him, could at any time after acceptance by the other party withdraw from the contract and render his writing of no effect simply because his adversary could not be compelled to carry out the contract, by reason of the statute of frauds. If that proposition be true, then it would require a contract or a note or memorandum thereof in writing to be signed by both of the parties. Under that proposition, the owner of land could not enforce a contract for the sale thereof against a purchaser who had agreed in writing to purchase the land, unless the owner had also bound himself in writing. The bare fear that the owner under such circumstances would plead the statute of frauds would not relieve the purchaser from the obligation of his contract. It is almost universally held that the defenses arising under the statute are personal, somewhat like the defense of usury and limitation. 20 Cyc. 306; 25 R. C. L. p. 732, sec. 380. Under our decisions the statute of frauds, in order to consti-

tute a defense must be pleaded. *Miller* v. *Lorentz,* 39 W. Va. 160. A contract for the sale and purchase of land will be specifically performed where the pleadings admit the contract and the statute of frauds is not pleaded and relied upon. *Moore, Keppel & Co.* v. *Ward,* 71 W. Va. 393. In some of the states contracts falling within the purview of the statute of frauds are for that reason declared to be absolutely void and unenforceable, as in Alabama and Michigan. But our statute constitutes it rather a rule of evidence. If it had been stipulated in the contract that Ruckman should immediately execute his deed, or within a specified time, then upon his failure so to do the defendant would be justified in withdrawing from the contract and in refusing to perform it. But we do not find that time was of the essence of this contract; on the other hand it appears that Ruckman was to execute this deed "when he came to town," which should be construed to mean within a reasonable time. We do not find that he was to execute the deed before the term of court was ended; it is otherwise indicated by statement of counsel in court that the suit at law should be continued as it would be settled.

We think that equity has jurisdiction to enforce the contract as alleged in the bill; that there is no substantial difference in the evidence showing the facts alleged; that Hay agreed in writing to accept a deed for these lots in consideration of the settlement of his claim arising under the suit in covenant; that Ruckman agreed to execute and deliver a deed for that consideration, and was able to do so, then having the title thereto; that he had a reasonable time thereafter to execute and deliver said deed and that Hay's attempted withdrawal from the contract did not relieve him therefrom after its acceptance. We are of the opinion to reverse the decree of October 12, 1921, sustaining the demurrer to the bill and dismissing the same, and will enter a decree here awarding the specific performance of the contract; that Hay be required to accept the deed tendered to him with the bill; that the confession of judgment by Ruck-

man in the action of covenant be set aside, and that action dismissed upon payment of costs thereof by Ruckman.

*Reversed and entered.*